**CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Great Northern Railway Company, Northern Pacific Railway Company, Soo Line Railroad Company, Union Pacific Railroad Company, and Norfolk and Western Railway Company, Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**No. 64 C 2014.**

United States District Court
N. D. Illinois, E. D.

May 24, 1965.

John H. Bishop, J. A. Gillen, Chicago, Ill., L. E. Torinus, Jr., St. Paul, Minn., Curtis H. Berg, St. Paul, Minn., Charles H. Clay, Minneapolis, Minn., Robert H. Duesenberg, St. Louis, Mo., Frank S. Farrell, St. Paul, Minn., W. P. Higgins, Omaha, Neb., Bishop, Burdett, Falasz & Ericson, Chicago, Ill., of counsel.

Nicholas Katzenbach, Acting U. S. Atty. Gen., William H. Orrick, Jr., Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Edward V. Hanrahan, U. S. Atty., Chicago, Ill., for defendant United States.

Robert W. Ginnane, Gen. Counsel, I. K. Hay, Acting Gen. Counsel, Fritz R. Kahn, Leonard S. Goodman, Asst. Gen. Counsel, Washington, D. C., for defendant Interstate Commerce Commission.

Paul M. Sand, First Asst. Atty. Gen., of North Dakota, Bismarck, N. D., Richard P. Runke, Chicago, Ill., for intervening plaintiffs Public Service Commission of North Dakota, North Dakota Mill and Elevator Assn., and the Grand Forks Chamber of Commerce, Grand Forks, North Dakota. Helgi Johanneson, Atty. Gen., of North Dakota, Bismarck, N. D., Thomas P. McElroy, Jr., Grand Forks, N. D., of counsel.

Charles W. Bucy, Asst. Gen. Counsel, Joseph E. Quin and Karl C. Grannan,

Attys., Office of the Gen. Counsel, Washington, D. C., for intervening defendant, Orville L. Freeman, Secretary of Agriculture of the United States.

J. S. Chartrand, Kansas City, Mo., for intervening defendant Board of Trade of Kansas City, Mo.

Joseph J. Nagle, Chicago, Ill., for intervening defendant Chicago, M. St. P. & P. R. Co.

Cyril J. Burrill, Omaha, Neb., for intervening defendant Omaha Grain Exchange.

Jordan Jay Hillman, Gen. Counsel and John C. Danielson, Gen. Atty., Chicago, Ill., for intervening defendant Chicago & N. W. R. Co.

Bryce L. Hamilton, Edmund J. Kenny, Winston, Strawn, Smith & Patterson, Chicago, Ill., for intervening defendant Chicago G. W. R. Co.

Daniel J. Sweeney, Richard M. Freeman, Belnap, Spencer, Hardy & Freeman, Chicago, Ill., for intervening defendants Archer-Daniels-Midland Co., General Mills, Inc., and The Pillsbury Co.

Before CASTLE, Circuit Judge, and PERRY and AUSTIN, District Judges.

PERRY, District Judge.

Plaintiff railroads in this action under Sections 1336, 1398, 2284 and 2321 through 2325, inclusive, of Title 28, United States Code, seek to suspend, enjoin, annul and set aside the Interstate Commerce Commission's order of June 5, 1964, entered in proceedings designated before the Commission as Docket No. 17000, Rate Structure Investigation, Part VII, Grain and Grain Products Within the Western District and For Export, in so far as that order modifies previous orders in said proceeding dated October 22, 1934 and March 4, 1936. (Reference hereinafter made to "plaintiffs" will include those who have intervened as plaintiffs in this action.)

This cause came on for hearing before a duly designated three-judge statutory court which finds that it has jurisdiction of the subject matter hereof and of the parties hereto.

It appears that in 1959 and 1960 five separate complaints, presenting similar issues, were filed with the Interstate Commerce Commission and consolidated for hearing and disposition, and that after proceedings had, the Commission on June 5, 1964, filed its Report and entered its order.

On page 755 of its Report, the Commission said:

"As indicated in appendix A, the complainants allege that the rate-break combinations applicable on certain grain shipments transited at the considered primary markets are unjust and unreasonable, unduly discriminatory, and subject the complainants to undue prejudice and disadvantage to the undue preference and advantage of other interior transit points and operators who are permitted to transit similar shipments at lower rates.

"It should be stressed that the level of the considered rates is not in issue. Moreover, the complainants concede that on the great majority of the considered traffic, which flows from west to east, the normal drawing areas for each of the primary markets are territories from which there are no through rates by way of these markets less than the rate-break combinations, and therefore present no problem to the primary market. *However, it is contended that on a small but important segment of the traffic* the rates applicable on shipments transited at the primary markets subject those markets and the transit operators located thereat to an unreasonable handicap in competing with interior markets and transit operators. It is only in instances where a one-factor through rate from origin to transit destination, lower than the rate-break combination applicable on shipments transited at a particular

primary market, applies through that primary market on shipments transited at interior points, that the rate-break combinations are alleged to be unlawful. Complainants seek transit on these lower rates through the primary markets. * * * " (Emphasis supplied) *

The Commission's order of June 5, 1964, here under attack, dismissed the complaints but it did not stop there. Although the considered rates applied only to limited and specified areas, and although the Commission's Report recognized that complainants' contentions related to a "small but important segment of the traffic," the Commission further ordered—

"That the proceeding in Docket No. 17000, Rate Structure Investigation, Part VII, Grain and Grain Products Within the Western District and for Export, 205 I.C.C. 301 and 215 I. C.C. 83, be, and it is hereby, reopened for reconsideration, and that the orders entered therein, on October 22, 1934, and March 4, 1936, respectively, be, and they are hereby, modified so as to be vacated and set aside to the extent that they require observance of rate-break combinations and of proportional rates therein prescribed as the exclusive basis of charges on shipments of grain and grain products at points from which proportional rates are applicable,"

thus abolishing the absolute "rate break" rule not only as to the limited area covered by the five complaints but also throughout the entire Western district.

It appears that at no time did the Commission give any notice that it contemplated reopening Docket 17000, Part VII, nor did it give any notice in Docket 17000, Part VII of the proposed modification of the orders of October 22, 1934 and March 4, 1936 to make observance of the "ratebreak" rule voluntary or permissive instead of mandatory throughout the entire Western district.

Plaintiffs base this suit on the failure of the Commission to comply (a) with Section 16(6) of the Interstate Commerce Act (49 U.S.C. § 16(6) and (b) with Section 4 of the Administrative Procedure Act (5 U.S.C. § 1003) which prescribes rulemaking procedures.

Plaintiffs do not gainsay the authority of the Commission to act or rule in the premises but contend that such action and ruling should have been preceded by notice in order to afford plaintiffs an opportunity to be heard and to present data on the question of the vacation of the absolute "ratebreak" rule throughout the entire Western district. They contend that their arguments made and data presented before the Commission were confined to the places and traffic involved in the proceedings on the five complaints.

It is interesting to observe that the recommended Report and order prepared and filed by the Examiner, who held lengthy hearings in the matter of the five complaints, contains the following paragraph relating to the issues:

"All of the complaints challenge the legality of charges on grain and grain products caused by the absolute rate-break rule with respect to certain of its applications at Minneapolis, Minn., and the lower Missouri River markets of Kansas City, Omaha and St. Joseph, Mo., and Kansas City, Atchison and Leavenworth, Kans. While one of the complaints attacks the lawfulness of the rule *per se*, the evidence is confined to specific rate situations. Only the lawfulness of these is considered herein. Relief is sought only as to existing rates and existing routes,"

to which limitation of the issues no exception was taken.

It appears that at one point during the proceedings before the Commission on the five complaints, the Secretary of Agriculture of the United States, an intervenor, requested that Docket 17000, Part VII, be included in the proceedings

---

* See Board of Trade of Kansas City, Mo. v. United States, 314 U.S. 534, 62 S.Ct. 366, 86 L.Ed. 432, for meaning of terms used in Commission's Report and order.

but the request was denied by the Commission.

Re: Notice required by Section 16(6) of Interstate Commerce Act

At page 775 of its Report the Commission said that its action in vacating the mandatory aspect of the rule was done pursuant to its authority under Section 16(6) of the Interstate Commerce Act. That section provides that "The commission shall be authorized to suspend or modify its orders upon *such notice* and in such manner as it shall deem proper." (emphasis supplied) Clearly the giving of some form of notice is contemplated by the statute.

Re: Notice required by Section 4 of the Administrative Procedure Act.

In Docket 17000, Part VII, the Commission prescribed a mandatory rule known as the "ratebreak system" which was in effect throughout the entire Western district. " 'Rule making' means agency process for the formulation, amendment, or repeal of a rule" (5 U.S.C. § 1001(c)) and the Commission's action in modifying the orders in Docket 17000, Part VII, and making permissive or voluntary that which had theretofore been mandatory, constituted "rulemaking."

Section 4(a) of the Administrative Procedure Act provides that

"General notice of proposed rule making shall be published in the Federal Register (unless all persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law) and shall include (1) a statement of the time, place, and nature of public rule making proceedings * * *."

The order of June 5, 1964 does not come within any of the exclusionary provisions of Section 4 which excuse compliance with notice requirements.

Defendants contend that plaintiffs had sufficient actual notice. However, notice cannot be ascribed to these plaintiffs because they were present and participated in the five-complaint proceedings before the Commission. Parties to proceedings cannot be expected to grope through the litigation. These plaintiffs were entitled to clear, decisive notice of the Commission's contemplated enlargement of the issues in the proceeding and of the proposed amendatory action in Docket 17000, Part VII. We agree with Vice Chairman Webb who stated in his dissent that "No segment of the grain trade and no carrier had any reason to suppose that any such drastic action was within the scope of this proceeding."

For reasons herein stated, the Court finds that the order of the Interstate Commerce Commission dated June 5, 1964, in the Commission's Docket 17000, Part VII, Grain and Grain Products within the Western District and for Export, to the extent that said order modifies prior orders in said Docket entered October 22, 1934 and March 4, 1936, is void and concludes that said order to the extent hereinabove specified must be vacated and set aside and its enforcement permanently enjoined, all without prejudice to further proceedings before or by the Interstate Commerce Commission not inconsistent with this opinion.

In arriving at our conclusions herein this court is not considering or passing on the question of whether orders of the Interstate Commerce Commission respecting freight rates applicable to grain or grain products, freight rates applicable or the rules governing such rates should be modified or changed in an appropriate proceeding by the Interstate Commerce Commission.

This memorandum opinion shall constitute the court's findings of fact and conclusions of law.

Judgment in accordance with opinion.