**NATIONAL LABOR RELATIONS BOARD, Applicant,**

v.

**BEECH–NUT LIFE SAVERS, INC., Respondent.**

**No. 67 Civ. 1573.**

United States District Court
S. D. New York.

Sept. 18, 1967.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Gary Green, and Marcus W. Sisk, Washington, D. C., Sidney Danielson, Regional Atty., Region 2, New York City, for applicant.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for respondent. Leonard Joseph, John Mason Harding, Lester Berkelhamer, Lawrence D. Ross, New York City, of counsel.

## MEMORANDUM

BONSAL, District Judge.

Applicant, the National Labor Relations Board (the Board), seeks an order under Section 11(2) of the National Labor Relations Act (the Act) (29 U.S.C. § 161(2)) directing the respondent, Beech-Nut Life Savers, Inc. (Beech-Nut), to comply with a "subpena *duces*

*tecum*" or in the alternative, an order under Section 9(c) of the Act (29 U.S.C. § 159(c)), in the nature of a mandatory injunction, directing Beech-Nut to file with the Regional Director for Region 2, New York, New York (the Regional Director) a list with the names and addresses of its salesmen eligible to vote in a representation election directed by the Board pursuant to Section 9(c) of the Act (29 U.S.C. § 159(c)). Jurisdiction is asserted under Section 11(2) of the Act, 29 U.S.C. § 161(2), and 28 U.S.C. § 1337.

On February 18, 1966 Office & Professional Employees International Union, Salesmen's Division, Local 153, AFL-CIO (Local 153) petitioned the Board for a representation election, claiming support among a substantial number of Beech-Nut's salesmen. Two other unions, District 65, Retail, Wholesale and Department Store Union, AFL-CIO (District 65), and Joint Organizing Committee of Locals 342, 400, 464, 474 and 489, Amalgamated Meat Cutters & Food Employees Union, AFL-CIO (Joint Committee), intervened in the representation proceeding to compete with Local 153 for certification as collective bargaining representative.

On April 14, 1966 pursuant to Section 9(b) of the Act, 29 U.S.C. § 159(b), the Regional Director determined that all Beech-Nut salesmen in Division 1 constituted the appropriate unit for the purpose of collection bargaining and ordered an election to determine whether the salesmen desired to be represented by any of the three unions or by no union. The Regional Director ordered Beech-Nut to file a list of the names and addresses of all salesmen eligible to vote in the election (the Excelsior list), which list the Regional Director would make available to the three unions. Excelsior Underwear Inc., 156 N.L.R.B. No. 111 (1966).[1] The

---

1. In *Excelsior* the Board held that to assure the fairness of representation elections and to assist the Board in disposing of challenges to the eligibility of voters, a list of the names and addresses of employees eligible to vote in a representation election (the Excelsior list) must be filed by the employer with the Regional

Director within 7 days after an election has been directed. The list would be made available to all participants in the election. Failure to file the Excelsior list would be grounds for setting aside an election whenever "proper objections are filed." The Board reasoned that without an Excelsior list, election participants lack

order stated that failure to file the list would be grounds for setting aside the election. Beech-Nut did not file the Excelsior list but on the day before the election, submitted the names (but without addresses) of its salesmen eligible to vote.

The election was conducted on July 21, 1966. Out of a total of 226 votes, 88 were cast for Local 153, 3 were cast for the Joint Committee, none were cast for District 65, and 135 were cast against representation by any union. On July 26, 1966 Local 153 filed objections to the election based upon Beech-Nut's refusal to file an Excelsior list and on August 9, 1966 Beech-Nut filed an answer to the objections. On August 10 the Regional Director sustained Local 153's objections, set the election aside and directed that a second election be held. On August 26, 1966 the Acting Regional Director ordered Beech-Nut to submit an Excelsior list within 7 days of the issuance of Notice of the Second Election. On September 9, 1966 Beech-Nut filed exceptions to the orders of August 10 and 26 and a request for review which the Board denied in a telegram dated September 23, 1966. On October 14, 1966 the Regional Director granted the requests of District 65 and the Joint Committee to withdraw from participation in the second election, and on November 29, 1966 the Regional Director issued a Notice of Rerun Election and ordered Beech-Nut to submit an

Excelsior list no later than December 7, 1966. In a letter dated December 5, 1966 Beech-Nut informed the Regional Director that it would not submit an Excelsior list since it believed the Excelsior "rule" was invalid. The Regional Director thereupon postponed the second election indefinitely.

On December 13, 1966 pursuant to Section 11(1) of the Act, (29 U.S.C. § 161 (1)), the Board issued a "subpena *duces tecum*" which was served on Beech-Nut the next day. The subpena directed that Beech-Nut either, 1) produce before the Regional Director its corporate records, including personnel and payroll records, showing the names and addresses of all its salesmen in Division 1; or, 2) furnish the Regional Director a list of the names and addresses of its salesmen in Division 1. On December 19, 1966 Beech-Nut filed a petition to revoke the subpena which the Board denied in a telegram dated December 29, 1966. Thereafter, the Board instituted the proceeding now before the court.

Beech-Nut contends that, 1) the subpena is invalid since it does not call for the production of "evidence" within the meaning of Sections 11(1) and (2) of the Act [2]; 2) there was substantial compliance with the Excelsior "rule" since Local 153 had the names and addresses of Beech-Nut's salesmen prior to the first election which should not have been set aside; 3) the Excelsior "rule" is invalid

---

an adequate opportunity to communicate with all employees concerning election issues, and that therefore, the list is necessary to assure an "informed electorate." The Excelsior "rule" was not applied to the parties in *Excelsior* but was made applicable to all elections directed 30 days after the date of the *Excelsior* decision.

2. Section 11 of the Act provides in relevant part that,

"(1) The Board, or its duly authorized agents or agencies, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. The Board, or any member thereof, shall upon application of any party to such proceedings, forthwith issue to such party

subpenas requiring the attendance and testimony of witnesses or the production of any evidence in such proceeding or investigation requested in such application. * * *

"(2) In case of * * * refusal to obey a subpena issued to any person, any district court of the United States * * * within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of * * * refusal to obey is found or resides or transacts business, upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the Board, its member, agent, or agency, there to produce evidence if so ordered, or there to give testimony touching the matter under investigation or in question; * * * *"

because: a) production of the addresses of Beech-Nut's salesmen will subject Beech-Nut to a risk of serious competitive injury and will infringe upon the salesmen's right of privacy and their right not to participate in union activities; b) the "rule" was not promulgated in accordance with the Administrative Procedure Act, 5 U.S.C. §§ 1001–1011; 4) the court does not have jurisdiction to issue an order compelling the production of an Excelsior list.

■ The court holds that it has jurisdiction under Section 11(2) of the Act, sustains the Board's subpena, and directs Beech-Nut to comply therewith.

■ The language of Section 11 of the Act is broad enough to permit the Board to subpena material needed to assist it in conducting representation elections (N.L.R.B. v. Duval Jewelry Co. of Miami, 243 F.2d 427 (5th Cir. 1957), reversed on other grounds, 357 U.S. 1, 78 S.Ct. 1024, 2 L.Ed.2d 1097 (1958); D. G. Bland Lumber Co. v. N.L.R.B., 177 F.2d 555 (5th Cir. 1949); N.L.R.B. v. Northern Trust Co., 148 F.2d 24 (7th Cir.), cert. denied, 326 U.S. 731, 66 S.Ct. 38, 90 L.Ed. 435 (1945)), including material such as pay roll records needed to assist the Board in determining which employees are eligible to vote. Cudahy Packing Co. v. N.L.R.B., 117 F.2d 692 (10th Cir. 1941); N.L.R.B. v. New England Transp. Co., 14 F.Supp. 497 (D.Conn.1936).

■ In *Excelsior*, the Board concluded that disclosure of the names and addresses of employees would assist the Board in handling challenges to the eligibility of employees to vote in representation elections. This conclusion is not arbitrary or unreasonable. Swift & Company v. Solien, CCH Labor Law Reporter ¶ 12,140 (E.D.Mo.1967). See N.L.R.B. v. A. J. Tower Co., 329 U.S. 324, 331, 67 S.Ct. 324, 328, 91 L.Ed. 322 (1946) (" * * * the Board must adopt policies and promulgate rules * * * in order that employees' votes may be counted accurately, efficiently and speedily."); N.L.R.B. v. Waterman Steamship Corp., 309 U.S. 206, 226, 60 S.Ct. 493,

503, 84 L.Ed. 704 (1940) ("The control of the election proceeding, and the determination of the steps necessary to conduct that election fairly were matters which Congress entrusted to the Board alone."); see also N.L.R.B. v. Friedman, 352 F.2d 545 (3d Cir. 1965); N.L.R.B. v. C.C.C. Associates, Inc., 306 F.2d 534, 538 (2d Cir. 1962) (scope of judicial review is "extremely limited" with respect to an application by the Board under Section 11 of the Act). Accordingly, since the Excelsior list will assist the Board in conducting a representation election, the subpena does not exceed the Board's power under Section 11 of the Act. Swift & Company v. Solien, supra; N.L.R.B. v. Wyman-Gordon Co., CCH Labor Law Reporter ¶ 12,071 (D.Mass. 1967); N.L.R.B. v. British Auto Parts, Inc., CCH Labor Law Reporter ¶ 11,745 (C.D.Calif.1967); see N.L.R.B. v. Rohlen, CCH Labor Law Reporter ¶ 11,661 (N.D.Ill.1967); N.L.R.B. v. Wolverine Industries Division, CCH Labor Law Reporter ¶ 11,658 (E.D.Mich.1966). Contra N.L.R.B. v. Montgomery Ward & Co., CCH Labor Law Reporter ¶ 11,659 (M.D. Fla.1967); N.L.R.B. v. Hanes Hosiery Division, CCH Labor Law Reporter ¶ 11,587 (M.D.N.C.1966).

■ The fact that the Board makes the Excelsior list available to the participants in the election, does not mean that the Excelsior list is not "evidence" (Swift & Company v. Solien, supra; cf. N.L.R.B. v. Friedman, supra) since the disclosure of the list to election participants is of assistance in handling challenges to the eligibility of employees to vote.

In support of its contention that there was substantial compliance with the Excelsior "rule" in the first election Beech-Nut points out that, 1) according to the election literature mailed out by Local 153, Local 153 had the names and addresses of Beech-Nut's salesmen; and, 2) Local 153 fully communicated with and presented its arguments to Beech-Nut's salesmen.

■ If Local 153 had the names and addresses of Beech-Nut's salesmen, prior

to the first election, Beech-Nut would not have been injured by complying with the Excelsior rule. See Swift & Company v. Solien, supra. In addition, the list compiled by Local 153 may not have been accurate and complete and, even if it was, a list of eligible voters is likely to change with time. The Board is entitled to require Beech-Nut to submit a list so that it can be checked with any lists obtained by the participants in the election. The *Excelsior* decision points out that this process of checking minimizes the number of challenges to the eligibility of voters that have to be ruled on by the Regional Director or the Board. With respect to Beech-Nut's contention that the first election should not have been set aside, it is clear that this court has no jurisdiction to review the decision of the Board setting the election aside. See, e. g., Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964).

Beech-Nut argues that it has a substantial proprietary interest in preserving the secrecy of the names and addresses of its salesmen, and that if their names and addresses are made available, it will be subjected to a risk of serious competitive injury. In support of this argument Beech-Nut has submitted the affidavit of its director of marketing and sales administration which points out that Beech-Nut is in the highly competitive business of manufacturing and marketing foods, beverages and confections; that its salesmen have knowledge of marketing and advertising plans prior to their implementation when these are not known to Beech-Nut's competitors who would benefit from advance knowledge thereof; and that if the names and addresses of Beech-Nut's salesmen were available to participants in representation elections, the risk that competitors would learn their names and addresses would be substantially increased, giving competitors a greater opportunity to learn Beech-Nut's plans, and to "pirate" Beech-Nut's salesmen.

■ Beech-Nut's argument is speculative at best and, even if it should be assumed that competitors have no other way of learning the names and addresses of Beech-Nut's salesmen, it cannot prevail. N.L.R.B. v. Rohlen, supra; see F.C.C. v. Schreiber, 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965); N.L.R.B. v. Friedman, supra; N.L.R.B. v. Kingston Trap Rock Co., 222 F.2d 299 (3d Cir. 1955). Beech-Nut has legal remedies available to protect itself (see, e. g., New York Penal Law, McKinney's Consol. Laws, c. 40, § 554; Purchasing Associates, Inc. v. Weitz, 13 N.Y.2d 267, 246 N.Y.S.2d 600, 196 N.E.2d 245 (1963); Minnesota Mining & Manufacturing Co. v. Technical Tape Corp., 23 Misc.2d 671, 192 N.Y.S.2d 102 (Sup.Ct. Westchester Co. 1959), aff'd, 15 A.D.2d 960, 226 N.Y.S.2d 1021 (2d Dept. 1962)), and the participants in the representation election have a substantial interest in knowing the names and addresses of Beech-Nut's salesmen. See Bok, The Regulation of Campaign Tactics in Representation Elections Under the National Labor Relations Act, 78 Harv.L.Rev. 38, 99–100 (1964).

■ Beech-Nut contends that disclosure of names and addresses of its salesmen will infringe upon their right not to participate in union activities and upon their right of privacy because its salesmen will be subjected to unwanted intrusions into their homes, and, will have to "submit to communication with a union" in violation of their right under Section 7 of the Act (29 U.S.C. § 157), not to participate in union activities. However, as the Board points out, the Excelsior rule "simply gives unions an opportunity to reach employees; it does not compel employees to read union literature mailed to them or to discuss the union with fellow employees or union representatives who might come to their homes for that purpose." The Section 7 rights of employees are not violated by union communication with the employees resulting from an Excelsior list ordered by the Board. See, e. g., N.L.R.B. v. S & H Grossinger's Inc., 372 F.2d 26 (2d Cir. 1967).

■ Beech-Nut salesmen are not required to talk to the representatives

of the competing unions, or to read their literature. The possible annoyance of being telephoned or visited at their homes is far outweighed by the public interest in an informed electorate. See N.L.R.B. v. Wyman-Gordon Co., supra; Bok, supra at 99–100; cf. N.L.R.B. v. F. W. Woolworth Co., 352 U.S. 938, 77 S.Ct. 261, 1 L.Ed.2d 235, reversing per curiam, 235 F.2d 319 (9th Cir. 1956); compare Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); Martin v. City of Struthers, Ohio, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943); Lamont v. Commissioner of Motor Vehicles, 269 F.Supp. 880 (S.D.N.Y. 1967). Remedies are available to the salesmen in the event of threats or intimidation. See Excelsior Underwear Inc., supra; Bok, supra.

Finally, Beech-Nut contends that the Excelsior rule is invalid since it is a rule within the meaning of Section 2(c) of the Administrative Procedure Act, 5 U.S.C. § 1001(c), and was not promulgated in accordance with the procedure for rule-making specified in Sections 3(a) (3) and 4 of the Administrative Procedure Act. 5 U.S.C. §§ 1002 (a) (3), 1003. It is clear, however, that the Board can make "rules" either by using the rule making procedures specified in the Administrative Procedure Act, or by administrative adjudication. See N.L.R.B. v. Penn Cork & Closures, Inc., 376 F.2d 52, 57 (2d Cir. 1967); N.L.R.B. v. A.P.W. Products Co., 316 F.2d 899 (2d Cir. 1963). Therefore the Excelsior rule is valid and giving the rule prospective application was a proper exercise of the Board's discretion. See Rockwell Manufacturing Co., Kearney Division v. N.L.R.B., 330 F.2d 795 (7th Cir.), cert. denied, 379 U.S. 890, 85 S.Ct. 161, 13 L.Ed.2d 94 (1964); see also N.L.R.B. v. Seven-Up Bottling Co., 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377 (1953). Moreover, Beech-Nut was given an opportunity to be heard and to present arguments as to why the Excelsior rule should not be applied to it. Compare Chicago, Burlington & Quincy R. Co. v. United States, 242 F.Supp. 414 (N.D.Ill.1965), aff'd per curiam, 382 U.S. 422, 86 S.Ct. 616, 15 L.Ed.2d 498 (1966); N.L.R.B. v. E & B Brewing Co., 276 F.2d 594 (6th Cir. 1960), cert. denied, 366 U.S. 908, 81 S.Ct. 1083, 6 L.Ed.2d 234 (1961).

For the foregoing reasons, Beech-Nut is directed to comply with the Board's "subpena *duces tecum*." There is no need therefore, to pass upon the Board's alternative application for an order in the nature of a mandatory injunction directing Beech-Nut to file an Excelsior list with the Regional Director or to pass upon Beech-Nut's contention that the court lacks jurisdiction to issue such an order.

Beech-Nut is directed to comply with the "subpena *duces tecum*" issued by the Board within 30 days of the order to be entered herein.

Settle order on notice.