**WYMAN–GORDON COMPANY et al.,**
**Appellants,**

v.

**NATIONAL LABOR RELATIONS**
**BOARD, Appellee.**

**No. 7000.**

United States Court of Appeals
First Circuit.

June 12, 1968.

Certiorari Granted Nov. 12, 1968.
See 89 S.Ct. 301.

---

Coffin, Circuit Judge, dissented.

Quentin O. Young, Boston, Mass., with whom Herrick, Smith, Donald, Farley & Ketchum, Boston, Mass., was on brief, for appellants.

Solomon I. Hirsh, Washington, D. C., Attorney, with whom Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Bernard Dworski, Washington, D. C., Attorney, were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This is an appeal from an order of the district court enforcing compliance with a National Labor Relations Board subpoena which ordered an employer to furnish names and addresses to its employees. The issuance of the subpoena stems from efforts of two unions, the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO (Boilermakers), and the United Steelworkers of America, AFL–CIO (Steelworkers), to represent some 1750 production and maintenance employees at appellant's plants in three Massachusetts communities. The Board's Regional Director, after investigation and hearing, ordered an election and directed appellant, in accordance with the rule announced in Excelsior Under-

wear, Inc., 1966, 156 N.L.R.B. 1236, to furnish the Board a list of the names and addresses of all employees eligible to vote. Appellant agreed to furnish a list of names, but refused to supply addresses. Notwithstanding this refusal, the election was held, resulting in 226 votes for the Boilermakers, 555 for the Steelworkers, and 903 against any union.

On objection by both unions, the Regional Director set aside the election and ordered a new one. The Board affirmed this decision. Again the Regional Director demanded an *Excelsior* list, and again appellant refused. The subpoena then issued. The Board filed a complaint seeking enforcement of the subpoena or, alternatively, a mandatory injunction directing appellant to comply with the *Excelsior* requirement. The district court ordered enforcement of the subpoena, and this appeal followed. By it appellant has launched a broadside attack against the *Excelsior* rule, challenging its substance, the procedure of its promulgation, and the statutory basis of the subpoena power invoked to enforce it.

██ The court is of one mind in not being greatly impressed by the arguments challenging the wisdom of the *Excelsior* rule, but this is a matter on which the majority of the court does not feel called upon to make a decision. We mention briefly the Board's concern in insuring an informed employee electorate, and in balancing management's right of access to employees in the plant through the mails with a right on the part of unions—and anti-union employees —to have access to the addresses of a constantly changing roster of employees. It is unnecessary to repeat the Board's responses in *Excelsior* to the contentions that its authority to compel disclosure is

limited to cases where other channels of information do not exist and that such compulsory disclosure invades the privacy of employees. Likewise we are not greatly impressed by the contention that compelling a list of names and addresses forces appellant to "interfere" with a labor organization, in violation of 29 U.S.C. § 158(a) (2), and to give a "thing of value" to a labor organization, in violation of 29 U.S.C. § 186. The former statute, as is indicated by the cases cited to us by appellant, is concerned with acts of favoritism. It is difficult to think that supplying the Board with information, pursuant to a Board order, which the Board will give to all persons alike who show a legitimate interest, would be considered a proscribed gift.

██ A threshhold question, however, is raised by appellant's claim that the *Excelsior* rule is invalid because, concededly, it was promulgated in disregard of the notice and publication requirements of the Administrative Procedure Act, 5 U.S.C.A. §§ 552, 553.[1] In the opinion of the majority of the court this issue is determinative.

Events leading to the establishment of the rule grew out of two consolidated cases coming before the Board on union challenges of elections on the ground that the employers had refused to supply the unions with lists of names and addresses of employees so that the unions might answer a campaign letter sent by the company to the employees. Recognizing the problem to be one affecting more than just the parties before it, the Board chose to solicit the assistance of selected amici curiae, and, ultimately, to establish a rule which not only did not apply to the parties before it, but did not take effect for thirty days.[2] In so doing we consider that the Board, to put it bluntly,

---

1. We are not here concerned with the effect of failure to publish rules, themselves properly arrived at, in compliance with 5 U.S.C.A. § 552(a) (1). In this respect we agree with the views of Judge Friendly speaking for the court in United Sates v. Aarons, 2 Cir., 1962, 310 F.2d 341, 347–348, that such rules are valid as against one with actual notice of them.

See 1 Davis, Administrative Law § 6.10 (1958).

2. Thirty days is the period which must elapse between publication and effective date of a rule promulgated in accordance with APA procedures. 5 U.S.C.A. § 553 (d).

designed its own rulemaking procedure, adopting such part of the Congressional mandate as it chose, and rejecting the rest.

In presently justifying its position the Board does not seek to carve out for itself the special defense suggested by our brother Coffin in dissent, but asserts that what it did was proper administrative action approved by the Court in SEC v. Chenery Corp., 1947, 332 U.S. 194, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995. It is, of course, true that the Court there recognized that an adjudicatory administrative body may promulgate rules through decision as well as through more formal rule-making procedures. This is a necessary and inevitable consequence of adjudication. Normally the Board must decide cases between party and party, as the Commission did in *Chenery*. The result, if stare decisis is to mean anything, is that any principle, once decided, stands as a guide for the future and may be spoken of as a rule. Examples are legion. Sometimes, until the Board spoke, all parties may have thought the "rule" was the other way. This may be unfortunate, but it is normally unavoidable, as *Chenery* demonstrates.

In *Excelsior*, however, the Board did not decide a case between party and party, or, more exactly, it decided a case one way, and took occasion to lay down a future rule the other way. *Chenery* in no fashion suggests approval of this. On the contrary, to the extent the Board was not deciding a case, this is precisely where Congress had instructed it as to the procedure it should adopt. The Board has chosen to disregard Congress.

Although the first time in this circuit, this is neither the first nor the most severe instance of Board action approximating contravention of the APA in this manner. It has been long and severely criticized, e. g., Peck, The Atrophied Rule-Making Powers of the National Labor Relations Board, 70 Yale L.J. 729 (1961); 1 Davis, Administrative Law § 6.13 (Supp.1967), with no apparent effect. We regret that the matter comes before us in connection with a rule to which we see little or no objection and for which there is much to be said. Yet, to blink at this procedure in this instance because we may approve of the result, we believe would be neither honest nor wise.[3] Congress provided no exception in the APA for rules improperly promulgated, but which some court, in a case between the agency and some individual, was persuaded were sound. To recognize such an exception would be to emasculate the statute.

We read Judge Coffin's dissent as disagreeing on this matter only in that he believes the rule promulgated to be "procedural" within the APA definition and therefore not subject to the requirement that advance notice of the intended rulemaking, and the substance of the rule, be given and that interested parties be afforded an opportunity to comment. 5 U.S.C.A. § 553. If the rule related simply to the mechanics of conducting an election, to superintending or checking the voters, we would agree. The *Excelsior* opinion makes the suggestion that this is one of the purposes. 156 N.L.R.B., supra, at 1242–1243. However, the Board's decision effectively contradicts its own declaration. The Board already had a valid rule requiring the employer to furnish a checklist. The additional requirement of the *Excelsior* rule is expressly stated not to apply when the time interval is "too brief * * * for the union to be able to make any meaningful use of this information." Id. at 1242, fn. 14. We can only conclude

---

3. We are not unmindful that two circuits have supported the *Excelsior* rule. NLRB v. Rohlen, 7 Cir., 1967, 385 F.2d 52; NLRB v. Hanes Hosiery Division—Hanes Corp., 4 Cir., 1967, 384 F.2d 188, cert. denied 390 U.S. 950, 88 S.Ct. 1041, 19 L.Ed.2d 1141. However, so far as appears, the Board's failure to comply with the APA was not brought to the courts' attention. The courts were concerned with whether the substance of the rule was within the Board's rule-making power, not whether it was properly adopted.

that *Excelsior's* purpose is what it appears to be on its face, a provision requiring the employer to furnish interested parties with affirmative assistance in conducting their election campaigns.

Such assistance is substance, not Board procedure. It differs only in degree and not in kind from a requirement, for example, that an employer having an assembly hall or a printing press should make it available to groups requesting it. The Board's contentions that furnishing a mailing list is not expensive or seriously burdensome, or is required only because the union has no effective substitute, may well be justifications for the rule, but they do not change its character. Judge Coffin's emphasis on the relative lack of burden, and comparing the compilation of the list with affording space on a bulletin board, suggests factual determinations in each case that seem to us unnecessary at best. His desire to resolve questions of doubt in favor of a procedural label loses importance to us when one considers that its only purpose is to avoid affording interested parties an opportunity to present their views as to what is, quite apparently, a controversial rule.

It is also true that compliance with the rule may well increase the fairness of the election. This, however, is a conclusory argument. Many actions by the employer may add to the fairness of the election. This does not mean that ordering them to be done is procedural. We are particularly unmoved by our brother Coffin's suggestion that the fact the rule sets up a positive as distinguished from a negative requirement is indicative that it is not substantive.

The judgment of the district court is set aside and the court is ordered to dismiss the complaint.

COFFIN, Circuit Judge (dissenting).

For the purpose of deciding the applicability of the notice provision of the Administrative Procedure Act, 5 U.S.C.A. § 1003(a), I view the *Excelsior* rule as procedural and thus valid despite absence of advance notice. I recognize that this is a ground not relied on by the Board, which seemed to assert a standard defense to a standard assault. But the same shoe fits both parties, for the distinction which divides this court was obviously far from the concern of appellant, which said in its brief, " * * * it is clear the Board recognized that it was establishing a new rule or procedure in the conduct of election proceedings under Section 9 of the Act."

The legislative history suggests to me that in grey areas doubt about the nature of a rule should be resolved in favor of applying the procedural label. In the first place, the few attempts to define terms equate substantive rules with "rules issued pursuant to statutory authority to implement statutory policy, as by fixing rates or defining standards", Attorney General's Manual on the A.P.A. (1947) 13 n. 5, or with rules "other than organizational or procedural * * * which implement the statute, as, for example, the proxy rules issued by the Securities and Exchange Commission pursuant to * * * 15 U.S.C. 78n." Manual, supra at 30. I read the language and these examples as giving restrictive rather than expansive meanings to "substantive rule".

In addition, the Senate Committee on the Judiciary made clear that in exempting procedural rules from the notice requirement it was seeking to encourage such rules because "those types of rules vary so greatly in their contents and the occasion for their issuance that it seems wise to leave the matter of notice and public procedures to the discretion of the agencies concerned." Legis. Hist. of the A.P.A. (1946), 18, 313.

The *Excelsior* rule itself seems to me to be clearly on the procedural side. It sets up a positive requirement of furnishing addresses as well as names of employees, to be applicable in every election. In this respect it differs from the proscription of selectively directed acts of coercion which are more appropriately accomplished through the unfair labor practice procedures.

That the requirement looks toward action the effect of which reaches beyond relations between a party and the Board ought not to be a controlling consideration, any more than it is with reference to the requirement in 29 C.F.R. § 101.19 (the Board's "Statements of Procedure" governing elections) that elections "be adequately publicized by the posting of official notices in the establishment. * * *" Indeed, the natural home of the *Excelsior* rule would seem to be in § 101.19.[1]

It is also, I think, a factor of relevance to the substance vs. procedure issue that the burden on the employer's time, efforts, or property in being compelled to furnish addresses of employees is inconsequential. I do not share the court's conclusion that this requirement "differs only in degree and not in kind" from one that would force an employer to make an assembly hall available on request. I would say that we are dealing with a dichotomy where difference in degree can result in a difference of kind or difference in categorization. This, I think, is illustrated by the above noted procedural requirement that notices of election be posted "in the establishment"—in itself a minimal encroachment on the employer's domain.

While it may be that forcing employers to share with unions their previous monopoly on knowledge of addresses may have a net result of strengthening union power generally, such a result cannot be said to alter substantive "rights" unless the employer's prior easy access to addresses rises to the dignity of a right. Cf. Sibbach v. Wilson & Co., 312 U.S. 1, 14, 61 S.Ct. 422, 85 L.Ed. 479 (1941). Moreover, the *Excelsior* rule by its terms applies to "all parties"—which include employees hostile to a new union or seeking decertification of an old one. Cf. Wallace Murray Co., 1968–1 CCH NLRB Dec. ¶ 22,256.

I would, for the above reasons, hold that the *Excelsior* rule was valid. But this would not have been an end to the case. There remains the difficult question—how, if at all, can *Excelsior* be properly enforced?[2] The district court ordered that the subpoena be honored. The Board's power lies in the statutory language granting "the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. * * *" 29 U.S.C.A. § 161(1).

The authorities which have upheld the subpoena power as available to procure an *Excelsior* list[3] have defined the proceedings leading to representation certification as an investigation and have tortured the concept of "evidence" into something which is helpful in "facilitating a fully informed electorate". NLRB v. Rohlen, supra 385 F.2d at 57. A scrutiny of 29 U.S.C.A. § 161 yields the impression that "evidence" is used throughout in its more traditional sense as data relevant to the proof of a fact in issue.[4]

1. All of this only refers to the primary objective of *Excelsior*, to achieve better elections. The fact that a secondary purpose, the expeditious handling of challenges of voter eligibility, is uncontrovertedly procedural is an added factor of some significance. While a procedural secondary rule could not save a rule otherwise clearly substantive, it would seem that a primary purpose of ambiguous effect might be aided, insofar as notice is concerned, by such a secondary purpose.

2. While what follows goes beyond the issue which divides the court, the writer feels obliged to explore the problem of enforcement which has led to conflicting and often strained statutory interpretation.

3. NLRB v. Rohlen, 385 F.2d 52 (7th Cir. 1967); NLRB v. Hanes Hosiery Division—Hanes Corp., 384 F.2d 188 (4th Cir. 1967), cert. denied 390 U.S. 950, 88 S.Ct. 1041, 19 L.Ed.2d 1141; NLRB v. British Auto Parts, Inc., 266 F.Supp. 368 (C.D.Cal.1967); Swift & Co. v. Solien, 274 F.Supp. 953 (E.D.Mo.1967); NLRB v. Teledyne, Inc., 56 CCH Lab. Cas. ¶ 12229 (N.D.Cal.1967); NLRB v. Beech-Nut, Inc., 274 F.Supp. 432 (S.D.N.Y. 1967).

4. A similar approach would be to define more narrowly the particular "investigation" as the quest for the names and addresses of the employees. With this frame of reference, the list of such names and addresses coud be considered more

I am sympathetic with the courts which have not been willing to make this leap. NLRB v. Q-T Shoe Mfg. Co., 279 F.Supp. 1 (D.N.J., filed Jan. 19, 1968); NLRB v. Montgomery Ward, Inc., 54 CCH Lab. Cas. ¶ 11659 (M.D.Fla.1967).

A second solution, suggested by Q-T Shoe Mfg. Co., supra, is that the only way to enforce the *Excelsior* rule is first to secure a determination that refusal by an employer to provide a list of names and addresses of employees constitutes an unfair labor practice under 29 U.S. C.A. § 158(a) (1), and then to seek the aid of the court under 29 U.S.C.A. § 160(e). This would seem plausible until the statutory definitions of unfair labor practices are examined. The Board in *Excelsior* wisely refrained from saying whether refusal to disclose names and addresses of employees would constitute "interference, restraint, or coercion" within the meaning of 29 U.S.C.A. § 158 (a) (1). I would say that it is at least doubtful that any one of the effective verbs would cover such a case. "Interfere" is the most adaptable, but its entire thrust is aggressive, not passive. According to Webster's International Dictionary (3d int. ed. 1961), it means such things as "intervene", "intermeddle", and "interpose".

It cannot be said with assurance that a refusal to respond to the *Excelsior* rule —unless, perhaps, a repeated refusal— would predictably be denominated an unfair labor practice.[5] Moreover, constant litigation would ensue over the issue whether, in a given case, the refusal to provide a list had any effect at all on the representation proceeding. For example, in the case at bar appellant moved to quash the subpoena, citing as one ground that the unions already had employee mailing lists.

This leads to the remaining mode of enforcing the rule, if indeed there is any way at all. This is the injunction. The Congress has indicated by statute that the Board has authority to prescribe "regulations and rules of decision" governing consent elections. 29 U.S.C.A. § 159(c) (4). The Supreme Court has made it clear that "The control of the election proceeding, and the determination of the steps necessary to conduct that election fairly * * * [are] matters which Congress entrusted to the Board alone." NLRB v. Waterman S.S. Corp. 309 U.S. 206, 226, 60 S.Ct. 493, 503, 84 L.Ed. 704 (1940).

While there is a step between statute and rule, not present in United States v. Feaster, 330 F.2d 671 (5th Cir. 1964), I see no difference in principle. If, in *Feaster*, the statutory right to have access to books and records supported an injunction compelling access to names, addresses, and job classifications of employees, so here a rule predicated on statutory authority to regulate elections and carrying out Congressional policy should support the same remedy. Or, to go back to the observation in Walling v. Brooklyn Braid Co., 152 F.2d 938, 941 (2d Cir. 1945), we should "consider whether the injunction is reasonably required as an aid in the administration of the statute, to the end that the Congressional purposes underlying its enactment shall not be thwarted."

Assuming, therefore, the validity of the *Excelsior* rule, I see no other certain way in which it can be enforced than by

---

traditionally as "evidence" relevant to the proof of the object of the investigation. Indeed the subpoena served on appellant contemplated a hearing before the Regional Director at which appellant's president was to testify from corporate books and records concerning the names and addresses of employees. In lieu of such books, a list would be received but only after Board agents had "verified its contents by examination of the subpoenaed books and records". In short,

the list is arguably evidence tending to establish the true names and addresses being sought. The difficulty with this approach is that it tortures the word "investigation" into something quite different from its use in 29 U.S.C.A. § 159.

5. I would add that I would prefer some lesser sanction for enforcement of procedural rules than that stemming from an unfair labor practice proceeding.

injunction. And while the absence of other remedy is no adequate justification for judicial invention, I feel that enforcement of the rule lies well within the equity powers of the district court. I would therefore remand the case for consideration of the Board's alternative prayer for an injunction.