**NATIONAL LABOR RELATIONS BOARD, Petitioner-Appellee,**

v.

**BEECH–NUT LIFE SAVERS, INC., Respondent-Appellant.**

**No. 410, Docket 32002.**

United States Court of Appeals Second Circuit.

Argued April 10, 1968.

Decided Dec. 3, 1968.

Richard S. Rodin, Atty., N.L.R.B., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Gary Green, Washington, D. C., Atty., for appellee.

Leonard Joseph, Lester Berkelhamer, Lawrence D. Ross, Dewey, Ballantine, Bushby, Palmer & Wood, John Mason Harding, New York City, for appellant.

Before LUMBARD, Chief Judge, and WATERMAN and KAUFMAN, Circuit Judges.

WATERMAN, Circuit Judge:

This case is here on appeal from a final judgment order of the United States District Court for the Southern District of New York granting the National Labor Relations Board's application for enforcement of a subpoena *duces tecum* directed to appellant Beech-Nut Life Savers, Inc. pursuant to Section 11(2) of the National Labor Relations Act, as amended (61 Stat. 136, 73 Stat. 519, 29 U.S.C. § 151 et seq.). The district court's opinion is reported at 274 F.Supp. 432. The jurisdiction of this court is invoked under 28 U.S.C. §§ 1291 and 1294.

On February 18, 1966, Office & Professional Employees International Union, Salesmen's Division, Local 153, AFL-CIO (Local 153), petitioned the Board for a representation election to be held among certain of the appellant's salesmen. Two other unions, District 65 Retail, Wholesale and Department Store Union, AFL–CIO, and Joint Organizing Committee of Locals 342, 400, 467, 474, and 489, Amalgamated Meat Cutters & Food Employees Union, AFL–CIO, intervened in the proceeding. The Regional Director for Region 2, New York City, on April 14, 1966, ordered that an election by secret ballot be conducted among the affected salesmen of appellant. In his Direction of Election the Regional Director ordered appellant, among other things, to comply with the rule announced by the Board in Excelsior Underwear, Inc., 156 NLRB 1236 (1966).

The Board's *Excelsior* rule requires an employer to file with the Board's Regional Director a list of the names and addresses of all employees eligible to vote in a representation election within 7 days after the Director's direction of an election or after the close of a payroll period determinative for eligibility purposes, whichever is later. This list is made available to all parties participating in the representation proceeding in order to facilitate the communication of election issues to the employees and the prompt resolution of questions relating to the voting eligibility of particular employees. The *Excelsior* rule also provides that an employer's failure to file the required list is ground for setting the election aside whenever proper objections to the election are filed.

Appellant failed to file the *Excelsior* list. On July 20, 1966, one day before the scheduled election, the company submitted a list of names of the voters but without addresses.

On July 21, 1966, an election was conducted in which 88 votes were cast for Local 153, 3 votes for one of the intervening unions, no votes for the other intervening union, and 135 votes against representation by any union. Local 153 filed objections to the election because appellant had not complied with the *Excelsior* rule.

The Regional Director sustained the Local's objections, set aside the election, and ordered a second election. Appellant maintained that the July 21 election was a valid one and attacked the validity of the *Excelsior* rule and the impropriety of the Board's insistence upon compliance with the Rule in this representation proceeding. In the meantime the two intervening unions were permitted to withdraw from participation in the second election.

On November 29, 1966, the Regional Director issued a Notice of Rerun Election and notified the Company by letter that it had until December 7, 1966 to submit an *Excelsior* list. In a letter dated December 5, 1966 appellant refused to supply the *Excelsior* list. Because of appellant's continued refusal to furnish an *Excelsior* list, the second election was indefinitely postponed by the Regional Director.

On December 13, 1966, the Regional Director caused a subpoena *duces tecum* to be issued, pursuant to Section 11(2) of the Act, directing the appellant to produce and make available to the Board's Regional Office the appellant's personnel payroll records or, in lieu thereof, a list containing the names and addresses of all employees eligible to vote in the election. The appellant refused to comply with the subpoena or otherwise furnish the list and petitioned to have the subpoena revoked. The Board denied appellant's petition and applied in the district court for enforcement of the subpoena, or, alternatively, for a mandatory injunction directing the appellant to comply with the *Excelsior* rule. Jurisdiction was based on Sections 11(2) and 9(c) of the National Labor Relations Act, and on 28 U.S.C. § 1337. The district court upheld the *Excelsior* rule, refused to review the validity of the first election and entered judgment on November 1, 1967. It granted enforcement of the Board's subpoena. It also ordered that the appellant should, within seven days of the receipt of a notice from the Regional Director that a second election was to be held, forward the subpoenaed information to the Director. The court found it unnecessary to issue the alternatively requested mandatory injunction. This appeal followed.

Appellant's main contention is that the Board's *Excelsior* rule, regardless of whether the rule is a desirable or an undesirable one, is invalid and unenforceable because it was not promulgated in the manner required by the applicable provisions of the Administrative Procedure Act, 5 U.S.C. §§ 551–553. This contention is supported by two separate arguments. Appellant's first argument is that rules of general applicability and future effect, 5 U.S.C. § 551(4), such as the *Excelsior* rule, can

only be promulgated after *quasi-legislative* agency proceedings which conform with the Administrative Procedure Act's provisions dealing with quasi-legislative agency rule-making, 5 U.S.C. §§ 551–553; and, that only "orders," 5 U.S.C. § 551(6), which are applied to the particular case before the agency can be formulated in *quasi-judicial* agency proceedings. 5 U.S.C. § 551(7). Appellant's second argument is that, even if rules of general applicability and future effect can be formulated in the course of a quasi-judicial agency proceeding, the agency must be adjudicating the rights of parties before the agency when the rules are formulated, and that this was not the situation when the *Excelsior* rule was announced in Excelsior Underwear, Inc., supra. We do not agree with appellant's analysis or with its arguments.

Appellant's first position is grounded upon too narrow an interpretation of the range of powers given to the Board and of the regulations governing the manner in which the powers delegated to it may be exercised. Basically, the Board has the authority to use either of two procedures in dealing with the specialized problems it encounters in the administration of federal labor laws. The Board can resolve a problem arising within its limited jurisdictional sphere either by quasi-legislative promulgation of general rules designed to meet the problem, National Labor Relations Act § 6, 29 U.S.C. § 156; 5 U.S.C. §§ 551–553, or in quasi-judicial proceedings when the problem arises as an issue in a case before the Board, National Labor Relations Act § 6, 29 U.S.C. § 156; 5 U.S.C. §§ 554, 556, 557. The procedure it chooses to follow in resolving any particular problem is a matter for the Board, in its informed judgment, to decide. E. g., SEC v. Chenery Corp., 332 U.S. 194, 202–203, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947); NLRB v. Seven-Up Bottling Co., 344 U.S. 344, 73 S.Ct. 287, 97 L. Ed. 377 (1953); NLRB v. Penn Cork and Closures, Inc., 376 F.2d 52, 57 (2 Cir. 1967); NLRB v. A. P. W. Products Co., 316 F.2d 899 (2 Cir. 1963).[1]

Strictly construed, the Administrative Procedure Act could be interpreted as limiting all agency rule making to quasi-legislative proceedings. However, we do not believe Congress intended that the Act should be so strictly construed. Congress, in giving the National Labor Relations Board quasi-judicial powers, "cannot have been blind to the fact that the adjudicative process of the agencies, like that of the courts, gives birth to 'rules,' which may apply for the past, for the future, or more generally, for both * * *." NLRB v. A.P.W. Products Co., supra at 905; see Wyman-Gordon Co. v. NLRB, 397 F.2d 394 (1 Cir. 1968), cert. granted 393 U.S. 939, 89 S.Ct. 303, 21 L.Ed.2d 275 (U. S. Nov. 12, 1968); cf. National Labor Relations Act § 14(c) (1), 29 U.S.C. § 164(c) (1).[2] Therefore we hold that either of the

1. The NLRB has been criticized in the past both by this court, see, e. g., NLRB v. Majestic Weaving Co., 355 F.2d 854 (2 Cir. 1966); NLRB v. Penn Cork and Closures, Inc., 376 F.2d 52 (2 Cir. 1967), and by legal commentators, see, e. g., 1 Davis, Administrative Law Treatise § 6.13 at 149 (1967 Supp.); Peck, The Atrophied Rule-Making Powers of the National Labor Relations Board, 70 Yale L.J. 729, 752–761; Shapiro, The Choice of Rulemaking or Adjudication in the Development of Administrative Policy, 78 Harv.L.Rev. 921 (1965), because the Board has not fully utilized its quasi-legislative rule-making powers to their full advantage. However, regard-

less of the fact that the courts and the commentators would prefer to see the Board employ quasi-legislative procedures more often than it has, the Board has not seen fit to proceed in this manner.

2. Over the years a great many rules have been formulated and applied by the Board in its quasi-judicial proceedings. E. g., Brooks v. NLRB, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954); NLRB v. Auto Ventshade, Inc., 276 F.2d 303 (5 Cir. 1960); NLRB v. Pittsburgh Plate Glass Co., 270 F.2d 167 (4 Cir. 1959), cert. denied, 361 U.S. 943, 80 S.Ct. 407, 4 L.Ed.2d 363 (1960); Peerless Plywood, 107 NLRB 427 (1953).

congressionally authorized proceedings can be a proper source of Board rules having general applicability and future effect.

Appellant's second argument, that the Board was not adjudicating the rights of the parties before the Board when it announced the *Excelsior* rule, is supported by a recent First Circuit decision. In Wyman-Gordon Co. v. NLRB, 397 F.2d 394 (1 Cir. 1968), the First Circuit held that the *Excelsior* rule was not properly promulgated in the course of an adjudicatory proceeding and consequently was promulgated in violation of the Administrative Procedure Act. With all due respect, we do not agree with the First Circuit.[3]

If the *Excelsior* rule had been tacked onto an opinion dealing with completely unrelated facts and issues we would be inclined to agree with the First Circuit. This was not the situation in *Excelsior*, however. In *Excelsior*, the Union, after losing a Board-directed election, filed timely objections to certain pre-election employer conduct. One objection was that the employer refused to supply a list of names and addresses of its employees. Excelsior Underwear, Inc., supra at 1236. The Board considered this objection and the arguments made with reference to it and in the course of its decision announced the *Excelsior* rule which was to be applied to all future representation election cases. Excelsior Underwear, Inc., supra at 1239. Out of considerations of fairness the Board decided not to apply the new election rule to Excelsior Underwear, Inc., Excelsior Underwear, Inc., supra at 1240, n. 5, and the union's objection was overruled. Clearly the rule announced in *Excelsior* was substantially based on the facts and issues of that case.

It is true that the new rule extended beyond the immediate facts of the *Excelsior* case and was designed to be applicable to all future representation elections, but this is not a fatal defect. On the contrary, the Board in devising a rule is not limited to the particular facts of the case presented to it for adjudication. Cf. NLRB v. Seven-Up Bottling Co., supra 344 U.S. at 348–349, 73 S.Ct. 287. Effective administration of our federal labor laws and the sound resolution of conflicts arising in the course of administering those laws demand that the Board bring all its accumulated knowledge and experience to bear on any problem before announcing a rule designed to deal with that problem.

This second argument of appellant in support of its main contention, that the rule was not one which could be properly promulgated in a quasi-judicial proceeding, because it was not applied to the parties in the *Excelsior* case and only applied prospectively, is, as is its first argument, without merit. The National Labor Relations Board, like other agencies with quasi-judicial powers, has the power to determine that a rule change be prospective if the Board feels that fairness to the parties before it demands that this approach be followed. See NLRB v. E & B Brewing Co., 276 F.2d 594 (6 Cir. 1960), cert. denied, 366 U.S. 908, 81 S.Ct. 1083, 6 L.Ed.2d 234 (1961); cf. Rockwell Mfg. Co., Kearney Division v. NLRB, 330 F.2d 795 (7 Cir.), cert. denied, 379 U.S. 890, 85 S.Ct. 161, 13 L.Ed. 2d 94 (1964); Optical Workers' Union Local 24859 v. NLRB, 227 F.2d 687 (5 Cir. 1955). There is nothing anomalous about a prospective change in a legal rule occurring in an adjudicatory setting. In all fairness sufficient time may be required to permit persons to change systems and modes of dealing with one another. See Safarik v. Udall, 113 U.S.App. D.C. 68, 304 F.2d 944, 949–950, n. 4 and n. 5 (1962).

Therefore we hold that the *Excelsior* rule was not adopted in violation of the requirements of the Administrative Procedure Act.

3. The Fifth Circuit in a recent decision, Howell Refining Co. v. NLRB, 400 F.2d 213 (5 Cir. 1968), has also declined to follow the First Circuit's *Excelsior* ruling in Wyman-Gordon Co. v. NLRB, 397 F.2d 394 (1 Cir. 1968).

■ Additionally, appellant attacks the *Excelsior* rule as being an abuse of the supervisory powers of the Board over representation elections. We find nothing in the contentions appellant advances which have not been fully and carefully considered and properly rejected either by the Board in Excelsior Underwear, Inc., supra, or the courts which have had occasion to examine the *Excelsior* rule. NLRB v. Rohlen, 385 F.2d 52, 55, n. 2 (7 Cir. 1967); NLRB v. Hanes Hosiery Division, Hanes Corp., 384 F.2d 188 (4 Cir. 1967), cert. denied, 390 U.S. 950, 88 S.Ct. 1041, 19 L.Ed.2d 1144 (1968). There is no need to reiterate the Board's and the courts' well articulated discussions which are more than adequate to dispose of these contentions.

Appellant also maintains that the district court erred in enforcing the subpoena requested by the Board for, first, the subpoena does not call for the production of "evidence" or "testimony" as required by the National Labor Relations Act. National Labor Relations Act § 11; 29 U.S.C. § 161 (1964).[4] We do not agree.

■ The term "evidence," as used in this section of the National Labor Relations Act, has not been limited to formal proof of disputed facts presented in a trial-type hearing. Rather, it has been construed by the courts so as to permit the Board to subpoena data which is relevant and helpful to a matter "under investigation" or "in question." E. g., NLRB v. Rohlen, supra, at 55–58; NLRB v. Hanes Hosiery Division, Hanes Corp., supra; but see, e. g., NLRB v. Q–T Shoe Mfg. Co., 279 F.Supp. 1 (D.N.J.1968); see generally, Note, The Judicial Role in the Enforcement of the "Excelsior Rule," 66 Mich.L.Rev. 1292 (1968). The *Excelsior* rule and the subpoenas issued in aid of the rule are designed to assist the Board in fulfilling its statutory duties to investigate questions of representation and to supervise representation elections. E. g., NLRB v. Rohlen, supra; NLRB v. Hanes Hosiery Division, Hanes Corp., supra; Excelsior Underwear, Inc., supra. The district court's enforcement of the Board-issued subpoena was entirely proper.

Second, appellant contends that, although there had not been exact compliance with the *Excelsior* rule, there had been substantial compliance with the policies underlying it. This contention is based on the alleged fact that the unions, at the time of the challenged election, had a list of the names and addresses of

---

4. 29 U.S.C. § 161(1) reads:
  § 161. Investigatory powers of Board
  For the purpose of all hearings and investigations, which, in the opinion of the Board, are necessary and proper for the exercise of the powers vested in it by sections 159 and 160 of this title—
  Documentary evidence; summoning witnesses and taking testimony
  (1) The Board, or its duly authorized agents or agencies, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. The Board, or any member thereof, shall upon application of any party to such proceedings, forthwith issue to such party subpenas requiring the attendance and testimony of witnesses or the production of any evidence in such proceeding or investigation requested in such application. Within five days after the service of a subpena on any person requiring the production of any evidence in his possession or under his control, such person may petition the Board to revoke, and the Board shall revoke, such subpena if in its opinion the evidence whose production is required does not relate to any matter under investigation, or any matter in question in such proceedings, or if in its opinion such subpena does not describe with sufficient particularity the evidence whose production is required. Any member of the Board or any agent or agency designated by the Board for such purposes, may administer oaths and affirmations, examine witnesses, and receive evidence. Such attendance of witnesses and the production of such evidence may be required from any place in the United States or any Territory or possession thereof, at any designated place of hearing.

all eligible employees.[5] Therefore, the appellant argues that the first election was valid, that it was improper for the Board to set aside the first election on the ground that the appellant did not comply with the *Excelsior* rule, and that it was error for the district court to enforce the Board-issued subpoena which was to be used in the allegedly improperly-directed rerun election.

On the ground that it lacked jurisdiction to do so, the district court refused to review the action of the Board in setting aside the first election, see, Boire v. Greyhound, 376 U.S. 473, 477, 84 S.Ct. 894, 11 L.Ed. 849 (1964). Assuming, though not deciding, that the district court did have jurisdiction to review that action of the Board, there surely was no compliance by the employer with the *Excelsior* rule. An employer-furnished list supplied the day before an election does not provide adequate time for fair scrutiny and appraisal. Even if Local 153 had timely obtained a list of employee names and addresses from sources other than appellant, such a list does not carry the same assurance of accuracy and completeness as a list obtained by an employer from the employment records. Excelsior Underwear, Inc., supra. Accuracy, completeness, and opportunity for scrutiny all are necessary if the policies underlying the *Excelsior* rule are to be fulfilled.

Ignoring the fact that the' list appellant furnished, whether accurate or inaccurate, was not supplied within the seven day period required by the *Excelsior* rule, appellant argues that if there is any doubt as to the completeness and accuracy of the list of employees in the unions' possession the Board should have held an evidentiary hearing directed to such an inquiry before issuing an order for a rerun election. This argument is without merit. The *Excelsior* rule was designed to expedite representation elections. To force the Board to hold an evidentiary hearing each time an employer refused to supply an *Excelsior* list because the employer claimed that the union had obtained the necessary names from other sources would only impede the representation election process.

We hold that the district court committed no error in enforcing the Board-issued subpoena.

Affirmed.

---

5. Apparently Local 153 sent out literature to employees in which it was stated that it had a list of names and addresses of the salesmen in all of the districts comprising the bargaining unit. This list was obtained, according to Local 153, from salesmen in the unit.