**TYLER PIPE AND FOUNDRY COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 25146.

United States Court of Appeals Fifth Circuit.

Feb. 11, 1969.

George E. Seay, Dallas, Tex., Glenn L. Greene Jr., W. Reynolds Allen, James N. Carter, Miami, Fla., for appellant; Fowler, White, Collins, Gillen, Humkey & Trenam, Miami, Fla., Malone, Seay, Gwinn & Crawford, Dallas, Tex., of counsel.

Arnold Ordman, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, NLRB, Mitchell L. Strickler, Lawrence M. Joseph, Attys., NLRB, Washington, D. C., for appellee.

Before JONES and COLEMAN, Circuit Judges, and CHOATE, Senior District Judge.

CHOATE, Senior District Judge:

This case is before the Court upon the petition of Tyler Pipe and Foundry Company to review and set aside an order of the National Labor Relations Board and the Board's cross-petition for enforcement of that order. The dispute arises from the events surrounding a Board-conducted representation election.

On August 5, 1965, at the direction of the National Labor Relations Board, the Regional Director conducted an election at the Tyler Pipe and Foundry Company, Tyler, Texas. The election resulted in 902 votes for the Union and 758 against it. The Company immediately moved to have the election set aside, alleging that certain conduct of the Union during the election campaign made a fair election impossible. The Regional Director investigated the charges and concluded that there was no basis for setting aside the election and certified the Union as the employees' bargaining representative. The Company then asked for a review and a hearing, submitting exhibits and affidavits in support of its requests. During the time these motions were pending before the Board, the Union requested the Company to begin negotiations. The Company refused on the ground that the certification proceeding was being reviewed and stated that it would test the Union's certification in court in the event that the Board denied relief. The Board subsequently denied the request for review and hearing and confirmed the Union's certification as bargaining representative.

At this point, the Union filed an unfair labor practice charge, alleging the Company's refusal to bargain. The Company persisted in its contention that the Union was not the proper bargaining agent. The Trial Examiner granted the General Counsel's motion for a judgment on the pleadings, finding that the employer had violated Sections 8(a) (1) and 8(a) (5) of the Act.[1] The Board, upon the record, adopted the Trial Examiner's findings and conclusions and ordered the Company to recognize the bargain with the Union as the employees' exclusive representative. The Company asks this Court to

---

1. Labor Management Relations Act, 29 U.S.C. § 158(a) (1), (5).

set aside the Board's order or, in the alternative, remand the case for a hearing. Specifically, the Company asserts that the Board erred in overruling its objections to the Union's conduct surrounding the election and that the Board compounded its error by holding that the Company had wrongfully refused to bargain.

Concisely stated, the Company asserts that the Union, in its campaign, predicated its arguments upon falsehoods which naturally tended to, and did in fact, deceive the employees with the result that the sanctity of the election was destroyed.

It was admitted that the Union representatives made strong assertions, essentially false, to the effect that section 14 (b) of the Labor Act[2] was to be repealed and that, in such an instance, the jobs of those employees who did not vote for the union would be imperiled since, with the repeal of 14(b), a closed shop would be in effect. It is true that an attempt to repeal 14(b) was being made in Congress, but the attempt failed and the allegation that it was to succeed was unfounded.

The Company also complained of handbills distributed by the Union that contained false and prejudicial material. These handbills falsely stated, among other things, that the employees had made many millions of dollars for the Company and its stockholders, and contained strong implications that the Company was holding out on the employees. The exaggeration of the Company's earnings was admittedly false.

Other handbills quoted Presidents Truman, Eisenhower, Kennedy, and Johnson, as well as the United States government and leaders of all religious organizations, as urging employees to organize. Here again the statements were either completely false or were misrepresentations of the leader's statements.

These latter handbills also contained sample ballots, marked "yes",[3] which contained the Union slogan and were signed on behalf of the Union.

The Company also complained of the Union's use of loudspeakers in the working area immediately preceding and during the election.[4] The loudspeakers were used to broadcast radio announcements sponsored by the Union which contained admittedly false statements and misinformation. Lastly, the Company objected to the Union's appeals to racial prejudice that interspersed the campaign.

The Board, in defense of its position, asserts that the Company, in certain instances, could have rebutted and offset the many false allegations.[5] In those

---

2. Section 14(b) provides: "Nothing in this Act shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law." 29 U.S.C. § 164(b).

3. This sample ballot was apparently a direct violation of a Board rule. In Allied Electric Products, 109 N.L.R.B. 1270 (1954), it was said:
 [Upon] consideration, the Board has decided that in the future it will not permit the reproduction of any document purporting to be a copy of the Board's official ballot, other than one completely unaltered in form and content and clearly marked sample on its face, and upon objection validly filed, will set aside the results of any election in

which the successful party has violated the rule. 109 N.L.R.B. at 1272.

4. This practice was apparently in violation of the rule of Peerless Plywood Co., 107 N.L.R.B. 427 (1953), as interpreted by U. S. Gypsum Co., 115 N.L.R.B. 734 (1956).

5. It seems, in passing, that the Board relies too heavily on the Company's *opportunity* to rebut the Union's misstatements. Rebuttal is significant; *opportunity* to rebut, taken alone, is a different matter. It must be remembered that the stated purpose of these proceedings is to determine the uninhibited desires of the *employees*. Too often, the battle raging between the company and the union obscures the very subject of the focus of our attention. The fact that the company or the union fails to exercise

other instances where the Company had no opportunity to reply, the Board determined, albeit without a hearing, that the employees either were not, or could not have been affected by the Union's spurious methods. We cannot accept the Board's complacency.

 It is well settled that the Board, in conducting an election, has the duty to provide "laboratory" conditions under which the employee's free choice may be determined under circumstances as ideal as possible. N.L.R.B. v. Houston Chronicle Publishing Co., 300 F.2d 273 (5 Cir. 1962). The standard for determining whether the conditions were met are as follows:

> [I]n a case where election propaganda is challenged by a party to the election, the ultimate question before the Board is *whether the propaganda has lowered the standards to the point where it may be said that the uninhibited desires of the employees cannot be determined from the election.* (Citation omitted). Those influences, regardless of their truth or falsity, which make impossible an impartial test, are grounds for invalidation of an election. (Citation omitted). 300 F.2d at 278. Emphasis supplied.

In the instant case, the Company offered to prove that substantial numbers of employees were influenced by the Union's misstatements. This, when taken with the totality of the circumstances of this election, make it clear that "there were material issues of fact which required a formal hearing, and that 'the failure of the Board to provide one was a denial of procedural due process.'" N. L. R. B. v. Smith Industries, Inc., 403 F.2d 889, 894 (5 Cir. 1968).[6] Under the election conditions that existed in this case, the Board should conduct a full hearing to determine the effect of the Union's methods on the vote of the employees. In so doing, the Board should determine whether

there was a deliberate use of false propaganda, for, when "the standards of election campaigning drop too low, the requisite laboratory conditions are not present, and the [election] must be conducted over again." N. L. R. B. v. Houston Chronicle Publishing Co., 300 F.2d at 278.

Enforcement is denied and the cause is remanded for a full hearing on the validity of the representation election.

---

an opportunity to rebut the lies of the other is of little moment in attempting to determine the effect of those falsehoods on the employees.

6. For a similar holding, see N. L. R. B. v. Genesco, Inc., 5 Cir., 1969, 406 F.2d 393.