409 F.2d 1207
 NATIONAL LABOR RELATIONS BOARD, Appellee,
v.
J. P. STEVENS & CO., Inc., Cleveland Cloth Mill, Respondent, and
William E. Blanton, on behalf of himself and two hundred and eighteen (218) other persons, employees of Cleveland Cloth Mill, Intervenors, Appellants.
 No. 13223.
 United States Court of Appeals Fourth Circuit.
 Argued March 6, 1969.
 Decided March 25, 1969.
 
 W. S. Blakeney, Charlotte, N. C. (Blakeney, Alexander & Machen, Charlotte, N. C., on brief) for appellants J. P. Stevens and Cleveland Cloth Mill.
 Horace Kennedy, Shelby, N. C. (Kennedy, Kennedy & Church, Shelby, N. C., on brief) for appellant William E. Blanton.
 Leon M. Kestenbaum, Atty., N.L.R.B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Solomon I. Hirsh, Atty., N.L. R.B., on brief) for appellee.
 Before SOBELOFF, BOREMAN and BRYAN, Circuit Judges.
 SOBELOFF, Circuit Judge:
 
 
 1
 J. P. Stevens & Company appeals from an order of the District Court enforcing a subpoena issued by the National Labor Relations Board to compel production of a list of names and addresses of those company employees who are eligible to vote in a forthcoming representation election. Additional appellants are 219 Stevens employees opposing production of the list who were permitted to intervene in the enforcement proceedings by the District Court.
 
 
 2
 In March, 1968, Textile Workers Union of America filed a petition in which it sought to represent employees at the company's Cleveland Cloth Mill in Shelby, North Carolina. Following a hearing, the Board's Regional Director ordered an election. He also directed the company to furnish a list of the names and addresses of all employees eligible to vote in the election, in accordance with the rule announced by the Board in Excelsior Underwear, Inc., 156 NLRB 1236 (1966). The company refused to comply with either the original production order of the Regional Director or the subsequent subpoena issued by the Board.
 
 
 3
 The Board then instituted this suit, pursuant to Section 11(2) of the Act, 29 U.S.C. § 161(2), to compel production of the list. A hearing was held, and the District Court subsequently permitted the intervention in the suit of 219 employees of the company who opposed the release of their names to the union. On November 15, 1968, the District Court ordered enforcement of the subpoena, relying on this court's decision in NLRB v. Hanes Hosiery Division — Hanes Corporation, 384 F.2d 188 (4th Cir. 1967). In Hanes, as in this case, a company facing a representation election refused to furnish a list of eligible employees to a union, as required by the Board's Excelsior decision. We there ordered production of the list, finding the Board's request to be an appropriate exercise of its authority over representation elections.
 
 
 4
 The appellants contend, however, that Hanes does not control here because of the intervention of the objecting employees, who claim that their rights will be violated if the union is given their names and home addresses. It is true that no employees intervened as parties in Hanes, but their rights were not ignored. In affirming the validity of the Excelsior rule, we specifically considered and rejected the company's argument in behalf of its employees that production of the list would violate their rights and give rise to harassment by the union. 384 F.2d at 191. Other circuits adjudicating Excelsior orders have dismissed similar assertions of employee rights. See, e. g., Howell Refining Co. v. NLRB, 400 F.2d 213, 216 n. 8 (5th Cir. 1968); NLRB v. Rohlen, 385 F.2d 52, 55 (7th Cir. 1967). Although in the present case the employees appear as intervenors in the litigation, they present no substantive arguments not already presented in behalf of employees to a number of courts.
 
 
 5
 The intervenors argue first that Section 7 of the Act, 29 U.S.C. § 157, guarantees them the right to refrain from assisting labor organizations, and that if the union is furnished their names and addresses they are being forced to aid the union in its campaign efforts. Affording the union an opportunity to communicate with the employees, however, does not encroach on their right to remain neutral. They are not required to read literature which the union may mail to them, or to speak to union representatives who may approach them at their homes.
 
 
 6
 Moreover, in the context of a representation election, an employee exercises his Section 7 rights most effectively by voting for or against representation. The Board promulgated the Excelsior rule in order to assure that the employee's freedom of choice in the election was not hampered by lack of information:
 
 
 7
 [A]n employee who has had an effective opportunity to hear the arguments concerning representation is in a better position to make a more fully informed and reasoned choice. Excelsior Underwear, Inc., 156 NLRB at 1237.
 
 
 8
 Release of the employee list to the union is not inconsistent with Section 7 but rather furthers its purposes.
 
 
 9
 The intervenors further contend that once the union obtains their names and addresses they will be subject to harassment at their homes in violation of their constitutional right to privacy. It is unlikely that a union seeking votes to be cast in a secret ballot election would alienate potential support by overly aggressive campaigning. Remedies are of course available if misconduct should occur. Excelsior Underwear, Inc., 156 NLRB 1236 (1966). However, the mere possibility that employees will be inconvenienced by telephone calls or visits to their homes is far outweighed by the public interest in an informed electorate. See NLRB v. British Auto Parts, 266 F.Supp. 368 (C.D.Cal.1967), aff'd, 70 LRRM 2065 (9th Cir. 1968); NLRB v. Beech-Nut Life Savers, Inc., 274 F.Supp. 432 (S.D.N.Y.1967), aff'd, 69 LRRM 2846 (2d Cir. 1968); cf. Martin v. City of Struthers, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943).
 
 
 10
 The lack of merit in the intervenors' position is revealed by the manner in which they state their opposition to the production of the list. They assert that they are not "joiners" and merely wish to be left alone, taking no part in the election campaign. If the list does not issue, however, only the union is barred from carrying on an effective campaign. The company already has full access to all the employees and ample opportunity to present to them its side of the issues. As we said in Hanes, 384 F.2d at 191:
 
 
 11
 [F]airness in the elective process demands here, as it does in public or corporate elections, the opportunity of contesting parties to communicate their respective positions to the electorate. (Emphasis added.)
 
 
 12
 Failure to compel production of the list here would impede union campaign efforts while leaving the company free to communicate its point of view to all its employees.
 
 
 13
 The intervening employees have not persuaded us that any potential inconvenience resulting to them from release of their names and addresses to the union is sufficiently serious to justify curtailment of the union's opportunity to communicate with them. The order of the District Court is accordingly
 
 
 14
 Affirmed.