**NATIONAL LABOR RELATIONS
BOARD**

v.

**DELAWARE VALLEY ARMAMENTS,
INC., and (Intervenors) Edith Bishop,
Emilia Comorote, Elva Love, Dorothy
Parks, Helen Reynolds, Donna Rieble,
Juanita Rudolph, Jenny Tremper, Anna
Webber and Carolyn Werts, individual-
ly and as representatives of a class**

**Delaware Valley Armaments, Inc.,
Appellant.**

**No. 18390.**

United States Court of Appeals,
Third Circuit.

Argued Feb. 17, 1970.

Decided Aug. 11, 1970.
Certiorari Denied Dec. 14, 1970.
See 91 S.Ct. 354.

Van Dusen, Circuit Judge, dissented
and filed an opinion.

Roland Morris, Duane, Morris and
Heckscher, Philadelphia, Pa., for appel-
lant.

Glen M. Bendixson, N.L.R.B., Wash-
ington, D.C. (Arnold Ordman, Gen.
Counsel, Dominick L. Manoli, Associate
Gen. Counsel, Marcel Mallet-Prevost,
Asst. Gen. Counsel, Marion Griffin,
Atty., N.L.R.B., on the brief), for appel-
lees.

Before KALODNER and VAN DU-
SEN, Circuit Judges, and FULLAM,
District Judge.

OPINION OF THE COURT

KALODNER, Circuit Judge.

The District Court entered an Order[1]
enforcing a subpoena[2] of the National

---

1. The Order was issued upon the Board's
   application to the District Court for en-
   forcement of its subpoena *duces tecum*
   directed to DVA, pursuant to Section 11

(2) of the National Labor Relations Act,
   29 U.S.C.A. § 161(2).

2. The Board had issued its subpoena pur-
   suant to the provisions of Section 11(1)
   of the Act, 29 U.S.C.A. § 161(1).

Labor Relations Board ("Board"), directing the appellant Delaware Valley Armaments, Inc. ("DVA") to furnish a list of the names and addresses of its employees eligible to vote in a representation election ordered by the Board, and this appeal followed.

The background facts are as follows:

On August 9, 1968, the International Union of Electrical, Radio & Machine Workers, AFL–CIO ("Union") filed a petition with the Board's Regional Office in Philadelphia, Pa., seeking a representation election with respect to DVA's approximately 300 production and maintenance employees.

At the pre-election hearing on the petition, on August 26, 1968, DVA stipulated the Board's jurisdiction and its denial of Union's request to represent its production and maintenance workers. It, however, informed the hearing officer that it would not file a list of the names and addresses of all its employees because in its opinion the Board lacked authority to direct such filing. In doing so it specifically challenged the validity of the election eligibility list "requirement" rule laid down in Excelsior Underwear, Inc., 156 N.L.R.B. 1236 (1966),[3] commonly referred to as the *Excelsior* Rule.

On August 29, 1968, the Board's Regional Director issued a Decision and Direction of Election. The latter directed DVA to file an election eligibility list containing the names and addresses of all eligible voters within seven days, and further stated that failure to comply with this directive would be grounds for setting aside the election, upon proper objection.

On September 5, 1968, DVA filed a list containing names and addresses of only 83 of its employees eligible to vote. In its letter enclosing the list DVA said:

"For your information, DVA employs mostly women and a great number of these women complained that the union had made threats and harassed them, and DVA was asked by these women not to supply their addresses. Because of this situation, DVA requested of all employees that they specify whether or not they wished their addresses released. As you can see, a vast majority of the employees refused to have their addresses released."

The letter did not state details of the alleged harassments and threats or identify victims or perpetrators.

On September 12, 1968, DVA furnished the Board with an additional list containing the names, but not the addresses, of all eligible DVA employees. The Board took no further action, and at the representation election conducted on December 12, 1968, the Union was defeated by a vote of 220 to 93. Union then filed objections asserting, *inter alia*, DVA's failure to file the directed list of its employees.

On January 16, 1969, the Regional Director, after an *ex parte* investigation, issued a Supplemental Decision on Objections to Election and Direction of Second Election, assigning as a basis DVA's failure to comply with its directive as to filing a complete list of names and addresses of eligible employees. In the stated Supplemental Decision, DVA was again directed to file the mooted eli-

---

3. In *Excelsior* the Board said (pp. 1239–1240):

"* * * we now establish a requirement that will be applied in all election cases. That is, within 7 days after the Regional Director has approved a consent-election agreement entered into by the parties * * *, or after the Regional Director or the Board has directed an election * * *, the employer must file with the Regional Director an election eligibility list, containing the names and addresses of all the eligible voters. The Regional Director, in turn, shall make this information available to all parties in the case. Failure to comply with this requirement shall be grounds for setting aside the election whenever proper objections are filed." (footnote omitted).

gibility list within seven days of the ordered second election.

On January 22, 1969, DVA filed "Exceptions and Request for Review to the Second Supplemental Decision." It therein repeated its prior allegations of union threats and harassment, and charged for the first time that "a number of the Union organizers assigned to the labor campaign had known criminal records." Again, there was no specification as to the identity of harassed or threatened employees nor specification as to the identity of the concerned Union organizers or the details of their "known criminal records." The Exceptions renewed earlier challenges to the validity of the Board's Order to file the mooted eligibility list. They also requested "oral argument" with respect to the contentions made therein, but made no request for a hearing, although they stated that DVA "wishes to indicate its willingness to participate in a hearing in which the facts above, as well as additional facts, would be placed in the record."

On February 10, 1969, the Board denied the Request for Review for the assigned reason that "it raises no substantial issues warranting review."

On May 6, 1969, DVA wrote to the Board stating that in view of the Supreme Court's decision on April 23, 1969, in National Labor Relations Board v. Wyman-Gordon Co., 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709, "it is submitted that the only appropriate way to proceed in the instant matter, is to hold a hearing so that the propriety of such a list [of employees] in the instant case may be 'weighed' in accordance with the demands of the Supreme Court."

The Board did not grant the suggested hearing, and on May 20, 1969, issued the challenged subpoena *duces tecum* directing DVA to produce its personnel and payroll records showing the names and addresses of all eligible employees, or, in lieu thereof, to file a list containing this information.

On May 29, 1969, DVA filed a "Petition to Revoke" the subpoena which alleged, *inter alia*, that the majority of its more than 300 employees were female and most of them had requested DVA not to submit their names and addresses because "the organizing personnel of the Union" included men "with known criminal records," and "union personnel * * * have harassed, threatened, restrained, coerced and otherwise unlawfully interfered with the employees * * *". The Petition further alleged that the Board had initially denied DVA's request for a hearing on the issue as to whether DVA should be required to submit a list of its employees.

On June 9, 1969, the Board, by telegraphic order, denied the "Petition to Revoke" and its request for a hearing, on the ground that "evidence was not shown of special circumstances why the Excelsior list need not be furnished at the time of the representation case hearing and direction of election or in response to the Regional Director's Supplemental Decision and on objection to election and direction of second election on January 16, 1969, or in petitions to revoke."

On July 18, 1969, the Board applied to the District Court for an order requiring obedience to its subpoena *duces tecum*.

DVA filed in the District Court proceedings a "Memorandum of Controlling Facts" in which it named three union representatives with alleged "known criminal records." The "Memorandum" cited records of the County Clerk's Office in Camden County, New Jersey, which revealed that one of the three had been found guilty of bookmaking and fined $1,000.00, and newspaper clippings showing that another had been arrested and charged with inciting to riot in picketing a strike-bound plant some 12 years earlier in 1957, and that the third had invoked the Fifth Amendment in 1957 and 1967 when he was asked by Senate committees whether he was an

active Communist in 1950 and 1956. The Memorandum did not submit follow-up data as to the outcome of the incidents involving the second and third union representatives.

It may be noted parenthetically that in the affidavits accompanying the "Application for Intervention," filed by ten DVA female employees in the District Court, none of the three union organizers were charged with threats or harassment. The burden of these affidavits was that the employees were concerned that "their right of privacy" would be violated in that they might be exposed to home phone calls or visits of union organizers.

The District Court, in a "Memorandum" * accompanying its Order enforcing the Board's subpoena, held that the Board properly acted within its powers in directing filing of the list of names and addresses of DVA employees eligible to vote in the ordered representation election. It also found that: "The objection that some of the Union organizers have criminal records is without merit."

On this appeal from the District Court's Order, DVA contends that it was denied "procedural due process" when it was not afforded an "adjudicatory hearing" prior to the Board's entry of its Order directing it to file a list of the name and addresses of all its employees, and again when the Board, without a hearing, denied its "Petition to Revoke" its subpoena *duces tecum* for production of the list of employees.

DVA urges that its contentions are supported by the "doctrine" of *Wyman-Gordon, supra.*

The Board, in turn, says that *Wyman-Gordon* establishes the validity of the Board's list requirement order in the instant case.

We agree with the Board's stated contention.

*Wyman-Gordon* [4] decided that a direction to an employer to submit a list of the names and addresses of its employees, when incorporated in a Board order to hold a representation election "is unquestionably valid" since it was entered *"in an adjudicatory proceeding;"* that the Board has "a wide discretion to insure the fair and free choice of bargaining representatives"; "[t]he disclosure requirement furthers this objective by encouraging an informed employee electorate and by allowing the right of access to employees that management already possesses;" and "[i]t *is for the Board and not for this Court to weigh against this interest the asserted interest of employees in avoiding the problems that union solicitation may present."* 394 U.S. 766–767, 89 S.Ct. 1430 (emphasis supplied).

*Wyman-Gordon* further held that Section 11(1) of the National Labor Relations Act "empowers the Board to issue subpoenas 'requiring * * * production of any evidence'" in connection

---

* The Memorandum is unreported.

4. In *Wyman-Gordon*, the Board, as here, ordered a representation election to be held, and in doing so further ordered the employer to furnish a list of the names and addresses of employees eligible to vote at the election. The employer refused to comply with the order to furnish the list, contending it was invalid; the unions there concerned lost the election and the Board sustained their objections to the election because the employer had not furnished the list. The employer again refused to obey a Board order to furnish the list or produce its personnel and payroll records showing its employees' names and addresses, and the Board then issued a subpoena *duces tecum* for the list or records, and thereafter filed an action in the District Court seeking the subpoena's enforcement.

The District Court held the Board's order valid and entered an order enforcing the subpoena. 270 F.Supp. 280 (D.C. Mass.1967). The United States Court of Appeals for the First Circuit reversed, 397 F.2d 394 (1968), on its holding that the Board's order to furnish the list was invalid because it was premised on the so-called *Excelsior* Rule, and the latter had not been promulgated in accordance with the rule-making requirements of the Administrative Procedure Act, 5 U.S.C.A. § 553.

with any investigation or proceeding incident to the exercise of powers vested in it by the Act, and that in the context of Section 11(1) "evidence" means not only proof at a hearing but also books and records and other papers which will assist the Board in making a particular investigation.[5] *Wyman-Gordon* additionally held that "Section 11(2) gives the district courts jurisdiction, upon application by the Board, to issue an order requiring a person who has refused to obey the Board's subpoena 'to appear before the Board  *  *  *  there to produce evidence if so ordered, or there to give testimony touching the matter under investigation or in question  *  *  *' 29 U.S.C. § 161(1) (2)." 394 U.S. 768, 89 S.Ct. 1431.

It should be noted that the cited holdings in *Wyman-Gordon* are from the opinion of Mr. Justice Fortas, in which Chief Justice Warren and Justices Stewart and White, joined, and that Mr. Justice Black in his opinion "concurring in the result," in which Justices Brennan and Marshall joined, stated his agreement with respect to them.[6]

■ The critical essence of *Wyman-Gordon* is that a representation election proceeding is an "adjudicatory proceeding;" a direction to an employer to furnish a list of its employees when incorporated in a Board order to hold a representation election is "unquestionably valid," [7] since the Board has "a wide discretion" in acting to insure a "fair and free choice of bargaining representatives;" and that with respect to the exercise of its discretion "it is for the Board," and not for a court, to weigh the Board's interest in assuring a fair election against "the asserted interest of employees in avoiding the problems that union solicitation may present."

In our opinion, *Wyman-Gordon* is dispositive of DVA's contention that it was not afforded an "adjudicatory hearing" with resultant denial of "procedural due process."

Other circuits, in post *Wyman-Gordon* cases, are in accord. See, e.g., National

---

5. In so holding, the Court at 394 U.S. 769, 89 S.Ct. 1426, cited, *inter alia*, our ruling to the same effect, in National Labor Relations Board v. Q-T Shoe Manufacturing Co., Inc., 3 Cir., 409 F.2d 1247, 1253, decided April 11, 1969, 12 days prior to *Wyman-Gordon*.

6. In his plurality opinion, Mr. Justice Fortas held that the *Excelsior* rule, announced prospectively, in Excelsior Underwear Inc., 156 NLRB 1236 (1966), was invalid as a "rule" because the Board in promulgating it, had not complied with the rule-making requirements of the Administrative Procedure Act, 5 U.S.C.A. § 553. The *requirements* of the *Excelsior* rule as to the furnishing of a list of employees in a representation election ordered by the Board, quoted here in Note 3, were, however, approved *per se*, and held to be enforceable when their compliance was directed in a Board order to hold a representation election.

7. *Wyman-Gordon said:*
"In the present case  *  *  *  the respondent itself was specifically directed by the Board to submit a list of the names and addresses of its employees for use by the unions in connection with the election. This direction, which was part of the order directing that an election be held, is *unquestionably valid*. See e. g. NLRB v. Waterman S. S. Co., 309 U.S. 206, 226, 60 S.Ct. 493, 503, 84 L.Ed. 704 (1940). Even though the direction to furnish the list was followed by citation to 'Excelsior Underwear, Inc., 156 NLRB No. 111,' it is an order in the present case that the respondent was required to obey. Absent this direction by the Board, the respondent was under no compulsion to furnish the list because no statute and no validly adopted rule required it to do so.
"Because the Board in an *adjudicatory proceeding* directed the respondent itself to furnish the list, the decision of the Court of Appeals for the First Circuit must be reversed." 394 U.S. 766, 89 S.Ct. 1430, 22 L.Ed.2d 709 (emphasis supplied, footnotes omitted).
In the above-cited *Waterman*, it was said with respect to an ordered representation election:
"The control of the election proceeding, and *the determination of the steps necessary to conduct that election fairly were matters which Congress entrusted to the Board alone.* Interference in those matters constituted error on the part of the court below." 309 U.S. 226, 60 S.Ct. 503 (emphasis supplied, footnote omitted).

Labor Relations Board v. Cone Mills Corporation, 419 F.2d 394 (4 Cir. 1969), cert. den., 397 U.S. 1040, 90 S.Ct. 1360, 25 L.Ed.2d 651 (1970); National Labor Relations Board v. Daniel Construction Company, Inc., 418 F.2d 790, 791 (4 Cir. 1969), cert. den., 397 U.S. 1039, 90 S.Ct. 1358, 25 L.Ed.2d 649 (1970); Chickasha Mobile Home, Inc. v. Meter, 410 F.2d 758 (8 Cir. 1969).

In the instant case, DVA concedes that the Board proceedings which followed filing of Union's petition seeking a representation election, were "adjudicatory proceedings," as was held in *Wyman-Gordon*. It complains only that in the course of the adjudicatory proceedings it was "entitled to a hearing prior to the promulgation" of the Board's order to file the employee disclosure list, in accordance with its constitutional due process rights. It makes this contention despite the fact that here, as in *Wyman-Gordon*, the Board, at the very outset of the representation proceedings, held a hearing on Union's petition, in accordance with the requirements of Section 9(c) (1)[8] of the National Labor Relations Act, and the Board's Regulations.[9] This hearing is the only hearing mandated by the Act in the course and determination of the pre-election adjudication. Further, the Act does not mandate a hearing on objections to an election already held. The Board's Regulations provide that its regional directors may, in their discretion, hold a hearing in such instance or make final disposition on the basis of an administrative investigation.[10]

Section 551(7)[11] of the Administrative Procedure Act defines "adjudication" as "agency process for the formulation of an order," and Section 554(a)(6)[12] excepts "the certification of worker representatives" from its requirement that in "Adjudications" federal agencies must grant a hearing on disputed factual issues.

On the score of DVA's due process contention it has been specifically ruled that constitutional due process is not violated where a hearing is not made mandatory in a federal agency adjudication. Law Motor Freight, Inc. v. Civil Aeronautics Board, 364 F.2d 139, 143–144 (1 Cir. 1966), cert. den., 387 U.S. 905, 87 S.Ct. 1683, 18 L.Ed.2d 622 (1967).

This, too, must be said with respect to DVA's complaint that it was not afforded a hearing on the Board's disclosure order.

DVA does not dispute that the Board in the course of the election representation proceedings "reviewed" its "submissions" with respect to its objections to issuance of the disclosure requirement founded on its employees' fears of union harassment at their homes should their addresses be made available to union organizers. Further, DVA does not dispute that in the course of its "review" the Board "made an investigation" of the "submissions."[13]

It may be observed as to the allegations of employee fears of union harassment, that it is settled, as earlier noted: "It is for the Board and not for this Court to weigh against this interest [for a fair representation election] the asserted interest of employees in avoiding the problems that union solicitation may present,"[14] and "[t]he mere possibility of such harassment [offensive un-

8. 29 U.S.C.A. § 159(c) (1).

9. 29 C.F.R. §§ 102.63(a), 102.64.

10. 29 C.F.R. § 102.69(c).

11. 5 U.S.C.A. § 551(7).

12. 5 U.S.C.A. § 554(a) (6).

13. At page 13 of its "Brief for Appellant" DVA said:

"Respondent does not dispute the fact *that the Board reviewed both of Respond-ent's submissions* (the Exceptions and Petition to Revoke). The Board also indicated in Exhibit C to its application for a Subpoena in this case that it made an investigation * * *. This assertion is likewise accepted by the employer." (emphasis supplied).

14. *Wyman-Gordon* at 394 U.S. 767, 89 S.Ct. 1430.

ion solicitation] is surely not a sufficient ground for invalidating" a Board directive to an employer to submit a list of employees' names and addresses in connection with an ordered representation election.[15] With respect to fears of employees that "they will be subject to harassment at their homes in violation of their constitutional right to privacy," it has been expressly held that " * * * the mere possibility that employees will be inconvenienced by telephone calls or visits to their homes is far outweighed by the public interest in an informed electorate." [16]

Here, the Board, after investigation into, and review of, DVA's general and non-specific allegations of employee fears of union harassment, found that "evidence was not shown of special circumstances" why the employees' list "need not be furnished at the time of the representation case hearing." Thus, as the Board asserts, "the Company's contentions were heard, considered, and adjudicated." The District Court, too, found that the Board had properly weighed and adjudicated DVA's stated contentions.

There remains this to be said:

Remedies are available to DVA and its co-appellants if union harassment or coercion prevents a free representation election, via a petition to the Board to set aside the election for that reason if the union wins the election. Excelsior Underwear, Inc., 156 NLRB 1236 (1966); National Labor Relations Board v. J. P. Stevens & Co., 409 F.2d 1207, 1209 (4 Cir. 1969).

Moreover, further remedies are available to appellants via the enforcement [17]

and review [18] provisions of the Act in the event of certification of Union as bargaining representative. National Labor Relations Board v. Daniel Construction Co., *supra*; Firestone Tire & Rubber Company v. Samoff, 365 F.2d 625, 627 (3 Cir. 1966).

We have noted: "Time is a critical element in election cases", and, "[t]his factor explains the refusal of Congress to provide for judicial review of representation disputes *until they result in an unfair labor practice order*." National Labor Relations Board v. Sun Drug Co., Inc., 359 F.2d 408, 414 (3 Cir. 1966). (emphasis supplied).

Tyler Pipe and Foundry Company v. National Labor Relations Board, 406 F. 2d 1272 (5 Cir. 1969) and National Labor Relations Board v. Howard Johnson Company, 398 F.2d 435 (3 Cir. 1968), cited by DVA in support of its contention that an evidentiary hearing is required "as a matter of procedural due process in a representation election case," are inapposite here. In *Tyler* the evidentiary hearing issue was presented on a petition for review, and in *Johnson* it was raised in an enforcement proceeding. In *Sun Drug*, too, the evidentiary hearing issue was presented in an enforcement proceeding.

For the reasons stated the District Court's "Order Requiring Obedience to Subpoena Duces Tecum" will be affirmed.

VAN DUSEN, Circuit Judge (dissenting).

I respectfully dissent and would reverse the District Court order enforcing the Board's subpoena.

---

15. National Labor Relations Board v. Q-T Shoe Manufacturing Co., Inc., 409 F.2d 1247, 1250 (3 Cir. 1969).

16. National Labor Relations Board v. J. P. Stevens & Co., Inc., 409 F.2d 1207, 1209 (4 Cir. 1969). Accord: British Auto Parts, Inc. v. National Labor Relations Board, 405 F.2d 1182, 1193 (9 Cir. 1968), cert. den., Teledyne, Inc. v. N.L.R.B.,

394 U.S. 1012, 89 S.Ct. 1625, 23 L.Ed.2d 39 (1969); National Labor Relations Board v. Hanes Hosiery Division-Hanes Corporation, 394 F.2d 188, 191 (4 Cir. 1967), cert. den., 390 U.S. 950, 88 S.Ct. 1041, 19 L.Ed.2d 1141 (1968).

17. 29 U.S.C.A. § 160(e).

18. 29 U.S.C.A. §160(f).

The Board has the authority to require the disclosure of the names and addresses of the employees of DVA, absent a validly adopted rule, only if there has been a proper "adjudicatory proceeding." N.L.R.B. v. Wyman-Gordon Co., 394 U.S. 759, 766, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969). However, the present record fails to show that the Board "provide[d] for an appropriate hearing" as required by Congress [1] prior to (a) the issuance of its direction to file an *Excelsior* list before the first election, (b) its similar direction of January 16, 1969, contained in the Supplemental Decision on Objections to Election and Direction of Second Election, and (c) its May 20, 1969, issuance of the challenged subpoena enforced by the District Court order forming the basis of this appeal.

The only hearing granted to the respondent DVA by the Board, which concededly has the duty to weigh "the asserted interest of the employees in avoiding the problems that union solicitation may present," [2] was the hearing of August 26, 1968. The respondent made clear that it would only agree to provide the addresses (as opposed to the names, which were furnished without challenge) of the employees who consented to that disclosure, relying on the invalidity of the *Excelsior* Rule for the reasons stated in Wyman-Gordon Co. v. N.L.R.B., 397 F.2d 394 (1st Cir. 1968).[3] The petitioning Union answered that it did not want an incomplete list of addresses and that it reserved "its right to demand an Excelsior list with the names and addresses of the employees." (76a). The Hearing Officer then made clear that there had been off-the-record discussions of this problem, but remarked that the recorded statements of each party were "sufficient." [4] From the record thus incompletely transcribed, it is impossible to tell whether the Hearing Officer gave the respondent an opportunity to present the special facts of its situation or whether the Hearing Officer actually considered these facts in rendering his decision.[5]

Prior to and after the first election, originally scheduled for September but postponed to December, the alleged harassment of employees commenced. The respondent requested a hearing con-

---

1. 29 U.S.C. § 159(c) (1) provides:

"(c) (1) Whenever a petition shall have been filed, in accordance with such regulations as may be prescribed by the Board—

(A) by an employee or group of employees or any individual or labor organization acting in their behalf alleging that a substantial number of employees (i) wish to be represented by collective bargaining and that their employer declines to recognize their representative as the representative defined in subsection (a) of this section,

\* \* \*

\*    \*    \*    \*    \*

the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto. If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof." See, also,

29 C.F.R. § 102.64. The applicability of this Congressional directive was specifically recognized in the opinion of Mr. Justice Black in N.L.R.B. v. Wyman-Gordon Co., *supra*, at 770–771 and n. 2, 89 S.Ct. 1426.

2. See N.L.R.B. v. Wyman-Gordon Co., *supra*, at 767, 89 S.Ct. at 1430.

3. At the time of this hearing, the writ of certiorari had not yet been granted. The writ was subsequently granted on 11/12/68. See 393 U.S. 932.

4. There were several off-the-record discussions before and during the hearing (71a). The Hearing Officer stated (76a–77a):

"I think that should be sufficient for the record on that. We have had off-the-record discussion on it."

5. Such a decision appears to be contemplated by the Board. For example, in Excelsior Underwear, Inc., 156 N.L.R.B. 1236, 1244 (1966), the Board stated that "\* \* \* if [a union subjects employees to the dangers of harassment and coercion in their homes] \* \* \* we shall provide an appropriate remedy."

cerning this harassment in January 1969 (15a), by its letter of May 6, 1969 (28a–29a), and in its Petition to Revoke Subpoena of May 28, 1969 (22a). If the Board is to require an *Excelsior* list under the allegedly particular facts of this case, I believe that it must grant the respondent its requested hearing. Cf. N. L.R.B. v. Sun Drug Co., 359 F.2d 408, 414–416 (3rd Cir. 1966); Tyler Pipe & Foundry Co. v. N.L.R.B., 406 F.2d 1272, 1275 (5th Cir. 1969).