BOOTH, Judge.
This cause is before us on appeal from a final order of Public Employees Relations Commission (PERC) refusing to set aside a representation election and certifying the Laborer’s International Union of North America, Local No. 666 (Union) as exclusive bargaining agent for the employees of North Brevard County Hospital District, Inc., (Hospital). The Hospital seeks to set aside the election on the grounds that, inter alia, the Union failed to comply with the registration requirements of Florida Statute Chapter 447 and committed unfair labor practices.
On December 23, 1974, the Union filed a petition for certification pursuant to Chapter 447 of Florida Statutes, seeking to represent certain hospital employees. The Hospital filed a motion to dismiss the Union’s petition based, inter alia, on violation of 447.305 (failure to properly register). The Union withdrew its petition.
On February 3, 1975, the Union filed a second petition. The evidence is uncontra-dicted that the Union was still not in compliance with § 447.305 at the time of its second petition. The Hospital again moved to dismiss on the same grounds as its prior motion. On April 15,1975, a public hearing was held to permit the parties to present evidence relevant to the determination of an appropriate bargaining unit. At that time the hearing officer denied the Hospital’s motion to dismiss.
On October 22, 1975, PERC conducted a non-evidentiary hearing and adopted the hearing officer’s denial of the Hospital’s motion to dismiss on the basis that the Hospital had failed to file exceptions to the hearing officer’s rulings. At that hearing, PERC found that the Union had not filed its annual financial report required by Florida Statute § 447.305, determined that the Union’s records were being held in connection with a grand jury proceeding and ordered the election held 45 days after the Union filed its financial report. At the October 22 hearing, the Union represented to PERC that the filing of the financial report would be made within 15 days from the date of the hearing or the Union would withdraw its petition for certification.[1] Following the Union’s representations that the financial report would be “immediately filed with you” [2] PERC ruled that the election would be held 45 days from filing of the report and did not require that the Union file by any day certain.
*559 Contrary to its representation, however, the Union neither filed its financial statement within 15 days of October 22, 1975, nor withdrew its petition. Indeed, it was not until February 24, 1976, 123 days after the hearing, that the Union filed its financial statement.
On March 25, 1976, the chairman of PERC ordered, inter alia, that an election should be held within 45 days. The Hospital again filed a motion to dismiss based on the error of PERC in treating the petition as valid in spite of the Union’s failure to comply with the statutes. The Hospital also filed a petition for writ of certiorari and a motion to stay with this Court and with PERC. All of these were denied.[3]
Five days before the election,[4] the Union filed a lawsuit against the Hospital. The following day, the Union’s business agent, Mr. Tyler, released a statement to the press that the suit was based on the Hospital’s delay of the bargaining process and violation of the employees’ constitutional rights. In other press releases and in meetings with employees, the Union represented, inter alia, that the suit was based on the Hospital’s “stalling the Union’s progress and the employees’ right to vote on the Union issue. . The suit claimed damages in the amount of $3.5 million based on allegations, inter alia, that:
“Since on or about September 1,1974, the defendants have been embarked upon a pattern, practice, campaign, scheme and intentional course of action designed to deprive employees [of the Hospital of] their rights of free speech, free assembly and free association. . . . ”
There were no specific allegations of wrongdoing or affidavits supporting the general averments.[5]
Between the filing of the suit and the election, the Union held meetings with the employees, and discussed the lawsuit. In addition, there were releases to the newspapers and handbills distributed by the Union concerning the lawsuit, right up to the day of the election. The Union’s business agent told the employees that they were to be the beneficiaries of the suit and each employee would be paid directly $5,000 of the damages awarded.
At the election, held April 28, 1976, the Union won by a vote of 181 to 158.
It is undisputed that the employees did not see the complaint. Thus even could we assume the ability of the employees to interpret and evaluate the complaint, such opportunity did not exist. The critical point is what the Union business agent told the employees was the basis of the suit. The record shows that the Union business agent told the employees that the Hospital’s delay of the election and bargaining process, with the resulting loss of wages and benefits to employees, was the basis of the lawsuit. The employees were told that they had been “done wrong” by the Hospital and that the wrong done was worth $3.5 million in damages.
The Hospital challenged the election on a number of grounds, and submitted evidence in support thereof. Thereafter, the chairman of PERC issued a report on objections which recommended that all of the Hospital’s objections be overruled and the results of the election certified. On October 4, 1976, the chairman of PERC certified the Union as the exclusive bargaining agent for the employees in the bargaining unit.
*560 The Hospital filed a motion to revoke certification alleging that the chairman’s certification was invalid since objections to the election were still pending before PERC, and because only PERC, rather than its chairman, had statutory authority to issue a certification. Thereafter, the Hospital filed a request for review of the chairman’s report on objections. On November 29 and 30, 1976, PERC held a hearing on the Hospital’s motions. PERC decided to vacate the chairman’s report on objections and directed another investigation, ordered that another report on objections be issued following investigation, and revoked the Union’s certification. PERC issued an order which limited the chairman’s investigation of the objections to two issues, one of which was the Union’s filing of the federal lawsuit. The chairman issued “Supplementary Report on Objections” recommending dismissal of the objections under investigation.
On June 28, 1977, the Hospital filed a request for review of this Supplementary Report. Six months later, on January 16, 1978, PERC issued the final order giving rise to the instant appeal. In that order, PERC ruled against the Hospital on all issues and certified the Union as agent for the bargaining unit.
I. REGISTRATION OF EMPLOYEE ORGANIZATIONS
On appeal to this Court, the Hospital urges, inter alia, that PERC erred in failing to dismiss the Union’s petition for certification on the ground that the Union had failed to properly register. Florida Statute § 447.305 states in pertinent part:
“447.305 Registration of employee organization.—
(1) Every employee organization, prior to requesting recognition by a public employer for purposes of collective bargaining, or prior to submitting a petition to the commission for purposes of requesting a representation election, shall adopt a constitution and bylaws and shall register with the commission by filing a copy thereof, together with a report in a form prescribed by the commission, and an amended report whenever changes are made, which shall include:
* * * * * *
(d) The current annual financial statement of the organization.
# * * ‡ * $
(2) Every employee organization shall file annually with the commission a financial report
♦ # * 9k * *
(6) An employee organization which is not registered as provided in this section is prohibited from requesting recognition by a public employer or submitting a petition requesting a representation election. This prohibition shall be enforced by injunction upon petition of the commission to the appropriate circuit court.” (e. s.)
Under the foregoing statute an employee organization may not request recognition nor submit a petition requesting a representation election unless that organization has on file with PERC a current annual financial statement.
In Bay County Board of County Commissioners v. PERC and Teamsters Local 991, 365 So.2d 767 (Fla. 1st DCA 1978), a properly registered Union had filed a representation petition with PERC, an election was held and the Union received the majority of the vote. After several proceedings PERC found that the Union had engaged in campaign misconduct which warranted setting aside the election. A new election was held in which the Union prevailed. Although the Union had properly registered prior to the first election, in the hiatus between the two elections its registration had lapsed. After the election, PERC permitted the Union to update its registration and subsequently certified it as the exclusive bargaining representative for the employees.
In the Bay County case, supra, PERC and the Union contended that § 447.305(6) “only requires registration as a condition precedent to requesting recognition by a public employer” and, therefore, since the Union *561 was properly registered at the outset, but had allowed its registration to lapse, it could “update” its registration after the election and be certified. In setting aside the election, we held (365 So.2d at 769):
“Teamsters and PERC urge that F.S. 447.305(6) only requires registration as a condition precedent to requesting recognition by a public employer or submitting a petition requesting a representation election. However, we construe the statute in its entirety and more broadly. . It is obvious that the legislature intended the information required of employee organizations under the statute to be available to interested parties during and preceding the election.
This case is a good example of an instance where information concerning the financial records of a union needed to be available to the public employees before those employees could make an informed free choice in the election. . ”
In the instant case the Union contends that it may petition requesting recognition and have proceedings continue on its petition for over a year without complying with § 447.305, so long as it files its financial statement prior to the election. Here, the financial statement was filed, and Union properly registered prior to the election, but PERC failed to enforce the statutory requirements as a precondition to PERC’s consideration of the Union as a “registered employee organization” (Rule 8H-1.10 infra at note 6).
The Union claims the registration requirements of § 447.305 are “hyper-technicalities.” We disagree. In Bay County Board of County Commissioners v. PERC, supra, we addressed one of the purposes of the registration requirements, to wit: That of having financial and other information on the Union available for a significant period of time prior to the election so as to allow employees to make an informed free choice in the election. Registration is also a precondition to the Union’s seeking recognition in the first instance. The public interest requires registration requirements in order to prevent irresponsible or unqualified groups from seeking recognition as bargaining agents for employees in public institutions. PERC’s rules recognize its obligation to verify Union registration status. Every employee organization seeking recognition must, by the terms of the statute and rules, be prepared to submit full credentials, including financial report, at the time it files its petition and to maintain that registration in a current status throughout the proceedings for recognition.[6]
The decision in Laborers International v. PERC, 336 So.2d 450 (Fla. 1st DCA 1976), is not to the contrary. In that case, a union sought to intervene in an election proceeding pursuant to PERC Rule 8H-3.05 which requires that the employee organization seeking to intervene file within 15 days of the date of the petition for certification filed by the competing employee organization, or to obtain consent of the chairman of PERC. On these facts the Court held that *562 it was improper for PERC to eject the intervening union from the proceedings and that they should have been allowed reasonable time to comply and participate in the election. In Laborers International, the election proceedings were instituted on petition of a properly registered union and were proceeding on that petition at the time the intervening union sought status as an intervenor. Further, at the time of the first PERC meeting considering the petitioner’s intervention, the petitioner was in compliance with the registration requirements. In the instant case, the employee organization seeking recognition is the initiating party, thus in control of the time requirements, and PERC proceedings on its petition have been continuing, over objection, for over one year despite lack of compliance with the statute. The Laborers International case does not support the Union’s position here that a petition for certification may be entertained while the Union is in noncompliance with the statute. The statute on its face precludes such a holding.
It is uncontested that the Union’s financial report for the 1974 fiscal year was not filed until February of 1976, with the result that its registration lapsed April 1, 1975.* Therefore, the Union was not registered at the time of the April 15, 1975, hearing before the hearing officer, nor was it registered at the October 22, 1975 hearing. PERC should have dismissed the Union’s petition for certification without prejudice to refile at such time as the requirements of the statutes and rules were complied with. PERC’s failure to require compliance with the statutory mandate and PERC’s rules on registration subjects both the public employer and the public employees to the electioneering activities of unregistered unions.
II. UNFAIR LABOR PRACTICES
The other issue to be considered on appeal is alleged unfair labor practices. The Hospital contends that the filing of a suit for $3.5 million in damages accusing the Hospital of violating the rights of its employees and leading the employees to believe that the Union’s suit would result in direct monetary benefits to each employee, constituted grounds for setting aside the election. The Union does not contest the facts concerning the suit nor the statements made to the employees about benefits to them from the suit, but contends that these were permissible campaign tactics.
The record reveals that for the first two of the three week campaign period, there was little Union activity. Then, barely four working days before the election, the Union filed its lawsuit in federal court. The un-eontradicted evidence is that the Union represented to the Hospital employees that the lawsuit was based on the Hospital’s delay of the bargaining process and election;[7] that as a direct result of the delay the employees had lost wages and fringe benefits; and that the employees would be the beneficiaries of damages recovered in that suit.
PERC, in its order validating the election, “expressly abstains from deciding whether the allegations made by Laborers in its lawsuit are a substantial departure from the truth” and states:
“[I]t is unnecessary for the commission to make this determination, even assuming the allegation in the complaint were a material misrepresentation under Hollywood Ceramics since the hospital had ample opportunity to respond to the lawsuit.”
The foregoing rule, though citing Hollywood Ceramics, 140 NLRB 211 (1962), comes close to the ruling in Shopping Kart *563 Food Market,[8] an NLRB decision officially adopted by PERC four months after its order in this case, and argued here by PERC and the Union.[9] The Shopping Kart decision overruled Hollywood Ceramics and announced a rule “declining to examine oral or written statements for mere truth or falsity. . . . ” and held the Board would “no longer set elections aside on the basis of misleading campaign statements.” Several months after oral argument in this case, the Shopping Kart case was overruled and the rule of Hollywood Ceramics restated by the Board in General Knit of California wherein the Board disapproved the Shopping Kart holding that the NLRB would “no longer interest itself in ‘the truth or falsity of the parties’ campaign statements’ but would leave it to the employees themselves to divine and sort out the truth or falsity of all the statements made in an election campaign. . . . ”[10]
In City of Punta Gorda v. PERC, 358 So.2d 81 (Fla. 1st DCA 1978), this Court affirmed PERC’s determination that there had been no misrepresentation and that the election was valid, stating (358 So.2d at 83):
“As to the unfair campaign tactic charges, PERC has adopted the test found in Hollywood Ceramics Co., 140 N.L.R.B. 221, 224, 51 L.R.R.M. 1600 (1962), which allows the setting aside of union elections only when there has been a substantial departure from the truth, at a time which prevents the other party from making an effective reply, so that the misrepresentation may reasonably be expected to have a significant impact on the election. We have previously recognized the discretion which should be accorded expert tribunals in their particular areas of special competence and expertise.”
The rule requires inquiry into the materiality of the misrepresentation and the opportunity for effective reply by the opposing side. Effective reply requires PERC to consider the nature of the misrepresentation made, the circumstances under which it is made and disseminated, as well as the time available, in order to determine whether effective reply is possible.
PERC’s obligation to determine that the challenged election was fair is not satisfied by the computation of hours or days between the making or dissemination of the misrepresentation and the election. The time factor, as well as the ultimate ability to respond, must involve a consideration of the nature of the misrepresentation itself. Here, the misrepresentations were: (1) made and disseminated by the Union at meetings, through press releases and circulation of handbills; (2) backed up by filing a lawsuit; and (3) compounded by misrepresenting the basis for the lawsuit filed. PERC and the Union do not contend in briefs and argument to this Court that the Hospital caused delay in the election. Thus, although the complaint is sufficiently vague to include anything, since the Hospital did not cause the delay, that could not be the basis of the federal suit. The Union’s pre-election statements to the contrary were a misrepresentation. The filing of the lawsuit itself, which was reported in the press on the day of its filing and with press releases each day thereafter until the election, added credence to the Union’s misrepresentations against the employer. Effective response, outside the judicial processes of the court, was not possible. The Union was in the position of having presented its charges to the court, an impartial arbiter, and having those charges there pending (presumably accepted by the court) with no possibility of resolution of the merits, if any, of the suit prior to the election.
In National Laborer Relations v. Cactus Drilling Corporation, 455 F.2d 871 (CA 5th 1972) the court was concerned with union misrepresentations that other oil drilling contractors (employers) had told the union they would have to take back pay raises already granted to the employees if the *564 union lost the election. This misrepresentation was made at least five days prior to the election. In evaluating the misrepresentation, the Fifth Circuit Court of Appeal announced the Hollywood Ceramics rule as follows:
“This court, relying on the Board’s previous pronouncements, has formulated a test for evaluating questioned campaign communications:
(1) Whether there has been a misrepresentation of a material fact;
(2) Whether the misrepresentation came from a party who was in an authoritative position to know the truth, or who had special knowledge of the facts;
(3) Whether the other party in the election had adequate opportunity to reply and to correct the misrepresentation;
(4) Whether the employees had independent knowledge of the misrepresented fact so that they could effectively evaluate the propaganda.”
The court then found that the statement concerning wage rollbacks met all four tests and required setting aside the election. Concerning the time factor, the court noted that the letter making the misrepresentation was sent out either on July 3, or on July 9, depending on whose version of the facts are accepted, and the election held on July 14, and stated (455 F.2d at 875, 876):
“[ W]hile the company may have had time to frame a reply, there was no effective opportunity to correct the misrepresentation. When this point was presented initially to the hearing officer, it was rejected. The hearing officer, relying on Hollywood Ceramics Company, Inc., 140 N.L.R.B. 221 (1962), stressed that the statements were not made at the last minute and that the employer had had ample time to reply. The principle of ample time for rebuttal grows out of the Board’s proper reluctance to police and censor the statements of parties to a certification election. The operation of the principle, however, is limited by the overriding consideration that the employees’ freedom to make an unfettered choice between the competing factions has not been destroyed. . . . While there is also certainly a proper place for the Board’s Hollywood Ceramics rule, in the context of this case a strict application of that rule is too severe.
As it was observed in Tyler Pipe & Foundry v. N.L.R.B., 406 F.2d 1272 (5th Cir., 1969):
‘It seems, in passing, that the Board relies too heavily on the Company’s opportunity to rebut the Union’s misstatements. Rebuttal is significant; opportunity to rebut, taken alone, is a different matter. It must be remembered that the stated purpose of these proceedings is to determine the uninhibited desires of the employees. Too often, the battle raging between the company and the union obscures the very subject of the focus of our attention. The fact that the company or the union fails to exercise an opportunity to rebut the lies of the other is of little moment in attempting to determine the effect of those falsehoods on the employees.”
We agree with that observation, especially in the context of the case at bar where any rebuttal by the employer would have been futile and served only to underscore in the voters’ minds the Union’s poisonous misrepresentation.” (emphasis theirs)
In Cactus, there were some 13 employers who could have made the rollback threat as represented by the union. PERC in the instant case distinguishes Cactus because in that case the employer allegedly threatening rollback was not identified, making reply difficult. Equally difficult of response is the instant case where the charges stated in the federal complaint were not sufficiently identified to be denied in any effective fashion. PERC, however, failed to fairly evaluate these circumstances and looked primarily to the length of time between the initial misrepresentation and the election, which PERC found was five days, and determined that there was adequate time for response. This is an instance *565 where, as in Cactus, the “strict application” of Hollywood Ceramics is inappropriate, and, effective response was not possible.
This Court has held that decisions of the NLRB and the federal courts under the NLRA are instructive. We have also recognized the expertise of PERC in the area and its authority to establish proper rules and standards in the matter. Pasco City School Board v. PERC, 353 So.2d 108, 116 (Fla. 1st DCA 1977). However, PERC’s version of the Hollywood Ceramics rule, applied in this case is too limiting of PERC’s duty to oversee the fairness of the election process in the public sector. The test applied must be one allowing full and fair evaluation of whether “the alleged material misrepresentations constitute a substantial departure from the truth which may reasonably have been expected to have a significant impact on the election. . . . ”[11]
Other decisions under the NLRA, dealing with the making of a misrepresentation followed by the filing of a charge to support, and add credibility to, the misrepresentation, are available and instructive. In NLRB v. Santee River Wool Combing Co., 537 F.2d 1208 (CA 4th 1976), the court ordered an election set aside because a Union representative speaking at a meeting of employees on the eve of the election “created the impression” that the employer had wrongfully discharged an employee. Credence was added to this misrepresentation by the Union’s filing an unfair practice charge several days before the election. In setting aside the election, the court held (537 F.2d at 1210):
“It is the apparent correctness of a statement which must be considered in determining its effect upon the voters, and it is clear that in this case those in attendance at the meeting would have regarded the union’s representations about Pringle as authoritative.”
In Westlock, 199 NLRB 549 (1972), a misrepresentation by the union concerning the Hospital’s treatment of an injured employee was backed up by the filing of an unfair labor practice charge and publicity in the newspaper as to the charge. These facts were held to require setting aside the election. To like effect is Bor-Ko Industries, Inc., 181 NLRB 292 (1970), wherein two days before the election union representatives told employees that the employer had been cheating on overtime pay; that the union had written a letter to the wage/hour division requesting an investigation; and that after the investigation was complete, the employees would receive back pay. The election was set aside.
Florida Statute § 447.501(2) proscribes conduct on the part of an employee organization “interfering with . . . public employees in the exercise of any rights guaranteed” under Chapter 447, and § 447.-501(3) provides that although expressions of argument or opinions are protected rights of free speech, expressions containing “promise of benefits” are not. The offer of improper financial inducements by, or on behalf of, a union seeking certification as bargaining agent, requires setting aside the election.[12] Decisions under the NLRA have held elections invalid where employees were subject to improper financial inducements.[13] *566 In those cases, the “common thread of vio-lative conduct was promising or conferring of economic inducement.”[14] In NLRB v. Madisonville Concrete Company, 552 F.2d 168 (6th Cir. 1977), the union arranged for the legal defense of an employee’s traffic ticket. The court ordered the election set aside. Here the Union filed a gratuitous $3.5 million damage suit on behalf of the employees it sought to represent. The implication was clear that the promise to give the damages recovered to the employees, or even to pursue the lawsuit for the benefit of the employees, would not obtain if the Union was rejected at the polls. The Union representative, Tyler, publicly stated that if the Union lost the election, “we [Union] will leave them [employees] to their fate.”
The standards in Florida in the public sector are at least as stringent as that applied in the private sector under the NLRA. PERC and this Court will diligently enforce the statutes which require the maintenance of conditions necessary for a fair election. This is in keeping with the public policy and the declared purpose of PERC, under Florida Statute § 447.201:
“It is declared that the public policy of the State, and the purpose of this part, is . to protect the public by assuring at all times the orderly and uninterrupted operations and functions of government.”
The statement of this Court in Bay County, supra, of the obligations of PERC in overseeing elections bears repeating here [365 So.2d 767, 769 (Fla. 1st DCA 1979)]:
“We observe that just as a prosecuting attorney has the duty and obligation of accomplishing fairness to the citizens he prosecutes as well as to those citizens whose rights he vindicates, so does PERC have the obligation in its functions and orders of being fair not only to employees and employee organizations but also to the public employer. The public employer, as a public entity, represents the citizens and taxpayers of Florida. Their rights are worthy of protection as well.”
Because we have resolved the dispute as above recited, we deem it unnecessary to address the other points raised by the Hospital.
Accordingly, the election is SET ASIDE and PERC’s order certifying the Union as the exclusive bargaining representative for the Hospital employees is REVERSED.
HERBERT M. KLEIN, Associate Judge, concurs.
ROBERT P. SMITH, Jr., J., concurs in result only.

. Transcript, October 22, 1975, hearing:
“[Mr. Frank, Union attorney] And I will represent to you in the context of that rule [8H-9.01] that the appropriate financial statements will be filed within the next thirty days. Well, we anticipate the return of the records within the next thirty days. And that’s our position.
[Mr. Mazene, Hospital attorney] For the record, we object to the hearing being held until that’s accomplished.
♦ # * * * *
[Mr. Smith, PERC commissioner] Are you requesting Mr. Frank that the rules be waived on your representation that the filings will be made within thirty days?
[Mr. Frank] That is correct, yes.
* * * * * *
[Mr. Frank] ... I can tell you from the conversation I had yesterday with the U.S. Attorney that those records are going to be returned in short order and that report will be prepared and immediately filed with you
. . I am prepared and authorized to make another suggestion to you.
If we may be accorded fifteen days from today with which to file the annual report in the event it is not filed within that fiñeen days we will withdraw the petition." (e. s.)

. Ibid.

. The Petition for Writ of Certiorari filed with this Court sought review of a non-final order which at that time was not reviewable under Chapter 120, Florida Statutes, under the holding of Panama City v. PERC, 333 So.2d 470 (Fla. 1st DCA 1976).

. The Complaint was filed in the Federal Court in Orlando in the late afternoon of Thursday, April 22, 1976. The election was held in Titus-ville, where the Hospital is located, on Wednesday, April 28, commencing at 7 a. m. The Hospital learned of the suit from newspaper articles of April 23. Service of suit was perfected after the election.

.Paragraph # 6 of the Federal complaint alleged that the Union was the duly designated representative of a majority of the employees. The facts are, however, that there had been no election, and the Union did not even have authorization cards from a majority of the employees at the time the suit was filed.

. PERC Rules
8H-6.01:
“Registration Requirements, (a) Every employee organization shall adopt a constitution and by-laws prior to requesting recognition by a public employer for purposes of collective bargaining or prior to submitting a petition to the Commission for purposes of requesting a representation election and shall register with the Commission by filing therewith: (1) two copies of said adopted constitution and by-laws; (2) two copies of an annual financial report, as described in Section 6.02 hereof, which report shall reflect the financial condition of the employee organization which existed either at the time of its original creation or at the end of its most recently concluded fiscal year, whichever date is more recent; . .
8H-1.10:
.“Registered Employee Organization. The term ‘Registered Employee Organization,’ as used herein, shall mean any employee organization which has satisfied the registration and annual financial report requirements of the Act as determined by the Commissioner.”
8H-3.16:
“Investigation of Petitions, (a) Subsequent to the filing of a Petition for Certification . the Chairman shall direct an investigation by a designated agent of all pertinent questions concerning representation, including, if applicable, the registered status of any employee organization involved . . .”

This “lapse” refers to the failure to annually update (§ 447.305(2)) the initial financial statement filed by union at time of registration (§ 447.305(l)(d)) and assumes such initial statement was filed.

. This was a misrepresentation of the cause of the delay. The Union, by failing to file its financial report, and PERC, by not setting a time certain within which the Union had to file, were the cause of the delay in the election. The Union, not the Hospital, had control over the time of the election since under the PERC ruling on October 22, 1975, the election would be held 45 days after the Union filed its financial statement, whenever the Union chose to file.

. 228 NLRB 1311 (April 8, 1977).

. City of Fort Lauderdale, 4 FPER 4167 (April 17, 1978); (PERC’s brief pp. 20-22).

. 239 NLRB 101, 102 (1978).

. General Knit, 239 NLRB 101, 99 LRRM 1687, 11691 (1978).

. At one of the meetings on April 22, Tyler told employees:
“[T]he way they figured it would amount to about five thousand dollars per employee and that this represented money due by Jess Parrish [Hospital] to employees over the last two years period.”
In addition, Tyler distributed a handbill just before the election which emphasized:
“As you know, we have filed a suit against the Hospital for violations of your Constitutional guarantees. If it is not completely clear to you from the news article, one thing you should know that if we win the suit, any actual damages awarded will go to the employees and not to the Union.”

. NLRB v. Madisonville Concrete Company, 552 F.2d 168 (6th Cir. 1977); Plastic Masters, Inc. v. NLRB, 512 F.2d 449 (6th Cir. 1975); NLRB v. Commercial Letter, Inc., 455 F.2d 109 (8th Cir. 1972); Collins & Aikman Corp. v. NLRB, 383 F.2d 722 (4th Cir 1967); Teletype Corporation, 122 NLRB 1594 (1959); Wagner Electric Corporation, 167 NLRB 532 (1967); and General Cable Corporation, 170 NLRB 1682 (1968).

. Albert Trostel Packings, 229 NLRB No. 56 (1977).